## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LARA VERA, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>      v.<br><br>PRIME HYDRATION LLC,<br><br>                              Defendant, | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Lara Vera, brings this Class Action Complaint against Defendant Prime Hydration LLC, individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

### NATURE OF THE ACTION

1.    Defendant formulates, manufactures, advertises, and sells the popular "PRIME Energy" drinks, which include Prime Energy Blue Raspberry, Prime Energy Ice Pop, Prime Energy Lemon Lime, Prime Energy Orange Mango, Prime Energy Strawberry Watermelon, and Prime Energy Tropical Punch (the "Products") throughout the United States, including in New York. Defendant markets its Products in a systematically misleading manner, by misrepresenting that its Products have specific amounts of caffeine that they do not in fact contain (the "Misrepresentations").

2.    Plaintiff and each member of the "Class" (defined below) accordingly suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth herein, and seek compensatory damages, statutory damages, and injunctive relief.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d). Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, the number of Class members is over 100, and there are numerous of these Class members who are citizens of states other than Defendant's states of citizenship.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and because Defendant transacts business and/or has agents within this District.

## PARTIES

5.      Plaintiff is a citizen of New York who resides in Poughkeepsie, New York. In June and August of 2022, Plaintiff purchased Defendant's Blue Raspberry Products several times from Family Dollar and Dollar General stores located in Poughkeepsie, New York. Plaintiff paid approximately $3.00 or $4.00 for each of the Products. Prior to purchase, Plaintiff carefully read the Products' labeling and advertising, including the representation that they contained "200mg of caffeine." This was a material representation that Plaintiff understood to mean that the Products contained 200 milligrams of caffeine. Plaintiff relied on this representation in her purchases of the Products and either paid a price premium for the product, or would not have purchased the Products at all had she known that this representation was false and misleading.

6.      Defendant is a limited liability company organized under the laws of Delaware, with its principal place of business located at 2858 Frankfort Ave., Louisville, Kentucky 40206.

7.      Upon information and belief, none of Defendant's members are citizens of the state of New York.

## GENERAL ALLEGATIONS

### *The Products*

8.      In 2022, Logan Paul and KSI, two YouTube personalities with a combined following of over 140 million subscribers, announced their collaboration on a new beverage company, Prime Hydration LLC.[1] Their involvement in the project generated significant social media hype, driving demand for the Products, particularly among school-age children and teenage boys.[2]

9.      Defendant reportedly generated $250 million in retail sales worldwide in its first year, with $45 million in January 2023 alone.[3]

10.     Defendant sells hydration drinks that do not contain caffeine, as well as energy drinks (the Products) that, according to Defendant, contain 200 milligrams of caffeine.[4] Both come in brightly colored packaging. For example, the "Ice Pop" flavored Hydration Drink and Energy Drink look nearly identical:

 

[5]

---

[1] https://www.therichest.com/rich-powerful/the-prime-hydration-story-how-it-became-a-big-name-in-the-beverage-business/ (last visited Sept. 6, 2023).
[2] *Id.*
[3] *Id.*
[4] *See* www.drinkprime.com (last visited Sept. 6, 2023).
[5] *See id.*

11.    The Products have generated controversy due to Defendant's marketing campaign, which has been criticized for targeting children and adolescents despite their high concentration of caffeine. Several countries, jurisdictions, and primary and secondary schools have banned or restricted the Products due to their caffeine content exceeding legal limits, or otherwise being deemed unsafe for children to consume.[6]

12.    In contrast to a 12-ounce can of Red Bull energy drink, which contains 114 milligrams of caffeine, or a cup of coffee, which contains around 100 milligrams of caffeine, the Products are labeled and advertised to contain 200 milligrams of caffeine per 12-ounce can.[7] This is the equivalent to about half a dozen Coke cans or nearly two Red Bulls.[8]

13.    There is no proven safe dose of caffeine for children.[9] Side effects for kids consuming caffeine could include rapid or irregular heartbeats, headaches, seizures, shaking, stomach upset and adverse emotional effects on mental health.[10]

14.    Accordingly, pediatricians and parents are calling for the U.S. to ban the sale of high-caffeine energy drinks like the Products to minors.[11]

15.    In a letter to the U.S. Food and Drug Administration, U.S. Senate Majority Leader Chuck Schumer called for the investigation of the Products, outlining four major areas he deemed worthy of investigating: the Products' claims to boost athletic performance and focus,

---

[6]https://en.wikipedia.org/wiki/Prime_(drink)#:~:text=Prime%20Hydration%2C%20LLC%20is%20affiliated,is%20now%20manufactured%20by%20Refresco (last visited Sept. 6, 2023).
[7] https://www.nytimes.com/2023/07/12/business/prime-drink-fda-caffeine.html (last visited Sept. 6, 2023).
[8] https://www.usatoday.com/story/money/2023/07/09/schumer-seeks-fda-probe-caffeine-prime-drink/70395708007/ (last visited Sept. 6, 2023)
[9] https://www.reuters.com/business/healthcare-pharmaceuticals/rising-caffeine-levels-spark-calls-ban-energy-drink-sales-children-2023-08-30/ (last visited Sept. 6, 2023).
[10] *Id.*
[11] *Id.*

Defendant's social-media heavy advertising, the Products' labels and warnings and "eye-popping caffeine content."[12]

16.     It is axiomatic that the amount of reported caffeine contained within Defendant's Products (or any energy drink product) is material to any consumer seeking to purchase an energy drink, particularly where there is the possibility of an adverse reaction to caffeine, such as with children.

17.     Defendant labels and advertises its Products to contain 200 milligrams of caffeine on its website,[13] through third-party retailor websites like Amazon.com,[14] and on the side and back of the Products themselves. Such representations constitute an express warranty regarding the Products' caffeine content.

18.     Defendant's Products' label plainly states the Products contain "200mg of caffeine":



---

[12] https://www.npr.org/2023/07/11/1186818826/logan-paul-ksi-prime-energy-drink-caffeine#:~:text=On%20Sunday%2C%20Schumer%20held%20a,serious%20health%20concerns%22%20for%20kids.

[13] https://drinkprime.com/products/tropical-punch-energy (last visited Aug. 6, 2023).

[14] https://www.amazon.com/Tropical-Naturally-Flavored-Caffeine-Electrolytes/dp/B0BRDGBDX8/ref=sr_1_5?crid=1YB6FVL6D903S&keywords=prime+energy+tropical+punch&qid=1694017142&sprefix=prime+energy+tropical+punch%2Caps%2C121&sr=8-5 (last visited Aug. 6, 2023).



19.     However, based upon testing commissioned by Plaintiff's attorneys, the Products actually contain between 215-225 milligrams of caffeine rather than the advertised 200 milligrams.

**Defendant's False, Deceptive, and Misleading Advertising of the Products' Caffeine Content is Unlawful**

20.     Pursuant to 21 U.S.C. § 321(f), Defendant's Products constitute a "food" regulated by the FDCA, 21 U.S.C. § 301, *et seq.*, and other FDCA regulations.

21.     Defendant's false, deceptive, and misleading label statements violate 21 U.S.C. § 343(a)(1) and the so-called "little FDCA" statutes adopted by many states[15], which deem food misbranded when "its labeling is false or misleading in any particular."

22.     Defendant's false, deceptive, and misleading label statements are unlawful under state unfair and deceptive acts and practices statutes and/or consumer protection acts, which prohibit unfair, deceptive, or unconscionable acts in the conduct of trade or commerce.

23.     New York has expressly adopted the federal food labeling requirements as its own. Thus, a violation of federal food labeling laws is an independent violation of New York law and actionable as such.

24.     The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Complaint.

25.     Defendant intended for Plaintiff and the Class members to be misled.

26.     Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the Class.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and the below-defined National Class, Consumer Fraud Multi-State Class, and New York Subclass (collectively referred to herein as the "Class" or "Classes"):

> **National Class:** All persons in the United States that purchased the Products within the applicable limitations period.
>
> **Consumer Fraud Multi-State Class:** All persons in the states of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri,

---

[15] *See, e.g.*, New York Consolidated Laws, Agriculture and Markets Law - AGM § 201.

New Jersey, New York, and Washington that purchased the Products within the applicable limitations period.[16]

**New York Subclass:**  All persons in the state of New York that purchased the Products within the applicable limitations period.

Excluded from the Classes are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

28.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

29.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the thousands to millions. The precise number of Class members and their addresses are presently unknown to Plaintiff, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

30.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

---

[16] The states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois  (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich.  Comp.  Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, 350 *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

a.  The true caffeine content in the Products;

b.  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

c.  Whether Defendant's actions violate the state consumer fraud statutes invoked below;

d.  Whether Defendant breached an express warranty to Plaintiff and Class members; and

e.  Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members.

31.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

32.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiff.

33.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class members she seeks to represent, she has retained counsel competent and experienced in complex class action litigation, and they will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and her counsel.

34.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).**
Absent a representative class action, members of the Classes would continue to suffer the harm
described herein, for which they would have no remedy. Even if separate actions could be brought
by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and
expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and
adjudications that might be dispositive of the interests of similarly situated purchasers,
substantially impeding their ability to protect their interests, while establishing incompatible
standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R.
Civ. P. 23(b)(1).

35.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**
Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other
members of the Classes, thereby making appropriate final injunctive relief and declaratory relief,
as described below, with respect to the members of the Classes as a whole.

36.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior
to any other available means for the fair and efficient adjudication of this controversy, and no
unusual difficulties are likely to be encountered in the management of this class action. The
damages or other financial detriment suffered by Plaintiff and the other members of the Classes
are relatively small compared to the burden and expense that would be required to individually
litigate their claims against Defendant, so it would be impracticable for Class members to
individually seek redress for Defendant's wrongful conduct. Even if Class members could afford
individual litigation, the court system could not. Individualized litigation creates a potential for
inconsistent or contradictory judgments, and increases the delay and expense to all parties and the
court system. By contrast, the class action device presents far fewer management difficulties, and

provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**COUNT I**
**Violation of State Consumer Fraud Acts**
**(On Behalf of Consumer Fraud Multi-State Class)**

37.     Plaintiff incorporates paragraphs 1-36 as if fully set forth herein.

38.     Plaintiff brings this claim individually and on behalf of the members of the Consumer Fraud Multi-State Class against Defendant.

39.     The Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Class[17] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

40.      Defendant intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

41.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

42.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

---

[17] California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, 350, *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

## COUNT II
### Deceptive Acts or Practices, New York GBL § 349
### (In the Alternative to Count I and on Behalf of the New York Subclass)

43.     Plaintiff incorporates paragraphs 1-36 as if fully set forth herein.

44.     Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

45.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making the Misrepresentations.

46.     The foregoing deceptive acts and practices were directed at consumers.

47.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics, ingredients, and benefits of the Products to induce consumers to purchase same.

48.     Plaintiff and members of the New York Subclass were injured because: (a) they paid a price premium for the Products based on Defendant's Misrepresentations; and (b) the Products do not have the characteristics, uses, or benefits as promised, namely the represented caffeine content. Namely, the Products contain levels of caffeine in excess of that represented on the Products labels and advertising. As a result, Plaintiff and members of the New York Subclass have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

49.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

<u>**COUNT III**</u>
**False Advertising, New York GBL § 350**
**(In the Alternative to Count I and on Behalf of the New York Subclass)**

50.     Plaintiff incorporates paragraphs 1-36 as if fully set forth herein.

51.     Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

52.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York GBL.

53.     Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to, the Misrepresentations, were and are directed to consumers.

54.     Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

55.     Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, have resulted in consumer injury or harm to the public interest.

56.     Plaintiff and members of the New York Subclass have been injured because: (a) they paid a price premium for the Products based on Defendant's Misrepresentations; and (b) the Products do not have the characteristics, uses, or benefits as promised, namely the represented caffeine content. Namely, the Products contain levels of caffeine in excess of that represented on the Products labels and advertising. As a result, Plaintiff and members of the New York Subclass have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

57.     As a result of Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, Plaintiff has suffered and will continue to suffer economic injury.

58.     Plaintiff and members of the New York Subclass suffered an ascertainable loss caused by Defendant's Misrepresentations because they paid more for the Products than they would have had they known the truth about the Products.

59.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT IV**
**Breach Of Express Warranty**
**(On Behalf of The National Class)**

60.     Plaintiff incorporates paragraphs 1-36 as if fully set forth herein.

61.     Plaintiff brings this claim individually and on behalf of the members of the National Class against Defendant.

62.     Plaintiff, and each member of the National Class, formed a contract with Defendant at the time Plaintiff and the other National Class members purchased the Products. The terms of these contracts included the promises and affirmations of fact made by Defendant on the Products' packaging and throughout its marketing and advertising representing the total caffeine content of the Products as 200 milligrams. This labeling, marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and members of the National Class and Defendant.

63.     Defendant purports, through its advertising, labeling, marketing, and packaging, to create an express warranty that the Products contained a specific caffeine content.

64.     Plaintiff and the National Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

65.     Defendant breached express warranties concerning the Products and their qualities because Defendant's statements about the Products were false and the Products do not conform to Defendant's affirmations and promises described above.

66.     Plaintiff and each member of the National Class would not have purchased the Products had they known the true nature of the Products' ingredients and what the Products did and did not contain—specifically, the actual caffeine content of the Products.

67.     As a result of Defendant's breach of express warranty, Plaintiff and each member of the National Class have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from the purchases.

68.     On March 4, 2024, Plaintiff's counsel sent Defendant a pre-suit notice letter, via certified mail return receipt requested, that complied in all respects with U.C.C. §§ 2-313, 2-607. Plaintiff's counsel sent Defendant a letter advising that it breached an express warranty and demanded that it cease and desist from such breaches and make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff's counsel's letter is attached hereto as *Exhibit A*.

### COUNT V
**Unjust Enrichment**
**(In the Alternative to Count IV and on Behalf of the National Class)**

69.     Plaintiff incorporates paragraphs 1-36 as if fully set forth herein.

70.     Plaintiff brings this claim individually and on behalf of the members of the National Class, in the alternative to Count IV for breach of express warranty.

71.     Plaintiff and the other members of the National Class conferred benefits on Defendant by purchasing the Products.

72.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and the other members of the National Class's purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff and the other members of the National Class because they would have not purchased the Products if the true facts would have been known.

73.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the other members of the National Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other members of the National Class for their unjust enrichment, as ordered by the Court.

**COUNT VI**
**Fraud**
**(On Behalf of The National Class and the New York Subclass)**

74.     Plaintiff incorporates paragraphs 1-36 as if fully set forth herein.

75.     Plaintiff brings this claim individually and on behalf of the members of the proposed National Class and the New York Subclass against Defendant.

76.     As discussed above, Defendant provided Plaintiff and Class members with false or misleading material information about the Products, including but not limited to the fact that the Products contain more caffeine than what is represented on the Products' packaging. These Misrepresentations were made with knowledge of their falsehood.

77.     The Misrepresentations made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Products.

78.     The fraudulent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

79.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the other Class members respectfully request that the Court:

A.     Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.     Award damages, including compensatory, exemplary, statutory, incidental, consequential, actual, and punitive damages to Plaintiff and the Classes in an amount to be determined at trial;

C.     Award Plaintiff and the Classes their expenses and costs of the suit, pre-judgment interest, post-judgment interest, and reasonable attorneys' fees;

D.     Grant restitution to Plaintiff and the Classes and require Defendant to disgorge their ill-gotten gains;

E.     Permanently enjoin Defendant from engaging in the unlawful conduct set forth herein; and

F.     Grant any and all such other relief as the Court deems appropriate.

Dated: April 8, 2024                    Respectfully submitted,

                                        */s/ Mason A. Barney*
                                        Mason A. Barney (SDNY Bar # MB7225)
                                        mbarney@sirillp.com
                                        Tyler Bean*
                                        tbean@sirillp.com
                                        **SIRI & GLIMSTAD LLP**
                                        745 Fifth Avenue, Suite 500
                                        New York, New York 10151
                                        Tel: (212) 532-1091

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Russell M. Busch
rbusch@milberg.com
J. Hunter Bryson*
hbryson@milberg.com
405 E 50th Street
New York, NY 10022
Telephone: (202) 640-1167

**KOPELOWITZ OSTROW P.A.**
Jeff Ostrow*
ostrow@kolawyers.com
Kristen Lake Cardoso*
cardoso@kolawyers.com
One West Las Olas, Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Nick Suciu III*
nsuciu@milberg.com
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472

***Counsel For Plaintiff and the Putative Classes***

*\*Pro hac vice* forthcoming