

Russell M. Busch
Senior Associate
405 E 50th Street, New York, NY 10022
Telephone: (630) 796-0903
Email: rbusch@milberg.com

May 23, 2024

**VIA ECF**
The Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *Vera, et al. v. Prime Hydration LLC*, Case No. 1:24-cv-02657-KPF (S.D.N.Y.)

Dear Judge Failla:

We represent Plaintiffs, Lara Vera and Jemirria Thompson ("Plaintiffs"), in this matter. We submit this response to Defendant, Prime Hydration LLC's ("Prime"), letter request for a pre-motion conference or permission to file a motion to dismiss. *See* ECF 14. While Plaintiffs do not oppose Prime's request for a pre-motion conference or its right to file a motion to dismiss, we respond to the letter to substantively address and oppose the Rule 12 challenges, as follows.

At the outset, Defendant belabors the procedural background of *Drugas v. Prime Hydration* at length, which is irrelevant to the instant anticipated Motion to Dismiss. What is at issue is Plaintiffs' Complaint in this matter, which alleges that Prime "markets its Products in a systematically misleading manner, by misrepresenting that [they] have specific amount of caffeine that they not in fact contain" *See* First Amended Complaint (ECF No. 12) ("FAC") ¶ 1. Worse, the Products' marketing targets children and adolescents, and there is "no proven safe dose of caffeine for children." *Id.* ¶ 14.[1] Given the known risks of adverse reactions to caffeine, especially to children, accurately disclosing the amount of caffeine per container is vital and material. *Id.* ¶ 17. Prime informs consumers that a 12 oz. can contains "200mg of caffeine," however, according to testing commissioned by Plaintiffs' attorneys, it "actually contain[s] between 215-225 milligrams of caffeine." *Id.* ¶¶ 18–20. Plaintiffs would not have purchased the product had they known the actual amount of caffeine it contained. *Id.* ¶¶ 5, 6.

In preview of its anticipated Motion to Dismiss, Prime asks the Court to assume consumers always want <u>more</u> caffeine in their drinks, regardless of what the label says. What consumers will and will not pay for, of course, is a question of fact that should be assumed in Plaintiffs' favor at the pleading stage. But liberal pleading standards aside, Defendant's theory of "more is always better" is patently absurd. Accurate labeling is necessary so that consumers can *decide for themselves* how much caffeine they want to ingest.

Defendant also conveniently compares Prime caffeine content to coffee products (the most caffeine-dense products on the market) instead of other energy drinks. This is not a coincidence and is a red herring.

---

[1] https://www.reuters.com/business/healthcare-pharmaceuticals/rising-caffeine-levels-spark-calls-ban-energy-drink-sales-children-2023-08-30/ (last visited May 22, 2024).



Defendant sells energy drinks, not coffee. And a 12 oz. can of Red Bull, for example, contains 107mg of caffeine[2], less than half the caffeine content of a 12 oz. can of Prime Energy. If more were always better, as Defendant asks the Court to accept as a matter of law, it would be hard to explain why a leading energy drink brand would choose to put less than half the caffeine content that Prime Energy puts into its own products.

As alleged in the Complaint, Plaintiffs' claims are based upon their attorneys' commissioned testing. FAC ¶ 20. Defendant ignores well-settled law that Plaintiffs are not required to disclose all the details of their testing at the pleading stage, *see John v. Whole Food Markets Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017), and essentially argues the Court should ignore Second Circuit precedent. .

**Counts II and III: Violation of New York General Business Law ("GBL").** Prime advances two meritless arguments against Plaintiffs' GBL claims.[3] First, Prime asks the Court to flout Second Circuit precedent that Plaintiffs are not required to disclose all the details of their testing at the pleading stage, *see John*, 858 F.3d at 737, and find (with no legal basis) that Plaintiffs' testing allegations are not well-pled.

Second, Defendant advances the equally absurd argument that representing the Products have less caffeine than they actually do is not "material to the reasonable consumer". What is "material" to the reasonable consumer is a question of fact. At the pleading stage, it is enough that Plaintiffs have alleged "the amount of reported caffeine contained within Defendant's Products [] is material to any consumer seeking to purchase an energy drink, particularly where there is the possibility of an adverse reaction to caffeine." That possibility is heightened in children and consumers with health complications, but too much caffeine has potential adverse health effects for <u>any</u> consumer. Prime does not have the right to decide for consumers how much caffeine they should ingest. Accurate labeling is necessary for consumers to decide that for themselves.

Finally, Defendant misses the mark when it says Plaintiffs fail to plead deception and injury separately. Plaintiffs' injury is a classic economic injury—they did not get what they bargained for and would not have purchased the Products or would have paid less if they had known the truth.

**Count I: Violation of Other States' Consumer Fraud Statutes.** In challenging Count I, Prime also claims Plaintiffs lack standing to bring actions under other states' consumer fraud statutes, and "fails to plead with particularity under Rule 9(b)." Prime is wrong. *See Kelly v. Beliv LLC,* 640 F. Supp. 3d 286, 299-300 (S.D.N.Y. 2022) (finding plaintiff did not lack Article III standing to assert claims on behalf of unnamed class members under other states' consumer protection laws.); *see also Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, at 96 (2d Cir. 2018) (holding whether plaintiff can bring class action under laws of multiple states not a question of Article III standing). Further, Prime's Rule 9(b) particularity argument fails on its face. Plaintiffs allege Prime misrepresented the caffeine content of its product on the label. How much more specific can one get?

**Count IV: Breach of Express Warranty.** Prime challenges Plaintiffs' express warranty claim, arguing Plaintiffs' pre-suit letter is insufficient to satisfy N.Y. U.C.C. § 2-607(3)(a), and that Plaintiffs fail to

---

[2] *Available at* https://fdc.nal.usda.gov/fdc-app.html#/food-details/173210/nutrients (last visited May 22, 2024).

[3] Presumably, Prime does not challenge that it has "engaged in consumer-oriented conduct." *Reyes v. Upfield US Inc.*, 2023 WL 6276685, at *3 (S.D.N.Y. Sept. 26, 2023) (interpreting GBL §§ 349 and 350).

satisfy a purported requirement of privity between the manufacturer and the consumer. First, Plaintiffs did provide Prime with a pre-suit letter pursuant to N.Y. U.C.C. § 2-607(3)(a).[4] *See* FAC ¶ 69. Second, Plaintiffs satisfied all the elements of a breach of express warranty claim. *See Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 550 (S.D.N.Y. 2022) (elements of breach of an express warranty claim in New York are: "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach."). Indeed, New York law does not require privity in this situation, as Prime suggests.[5] *See Brady v. Anker Innovations Ltd.*, 2020 WL 158760, at *10 (S.D.N.Y. Jan. 13, 2020); *Suarez v. Cal. Nat. Living, Inc.*, 2019 WL 1046662, at *8 (S.D.N.Y. Mar. 5, 2019).

**Count V: Plaintiffs Have Adequately Alleged Unjust Enrichment.** Prime argues Plaintiffs' unjust enrichment claim fails because it is identical to other claims raised in the Complaint. But Plaintiffs pleaded unjust enrichment *in the alternative to* their other claims. Thus, if Defendant is found liable for unjust enrichment it must be the case that their other claims failed—definitionally such claims cannot be identical.

**Count VI: Plaintiffs Have Adequately Alleged Fraud.** In addition to rehashing other challenges, Prime argues Plaintiffs' fraud claim fails as a matter of law because it doesn't plead clearly enough that Prime knew its products contained more caffeine than it disclosed, and it did not misrepresent that fact just to induce reliance. These claims are meritless. First, too much caffeine can be dangerous even for a healthy adult and consumers have the right to decide for themselves how much caffeine they want to ingest. This is especially important when marketing to children, where knowing the amount of caffeine in a product is even more vital. Prime's implication that it did not know its representations were wrong defies credulity, and even if it somehow mass produced a high-caffeine energy drink to market without knowing its caffeine content, it *should have known*. Next, given the media implications and the known risks of high levels of caffeine in energy drinks like this one, under reporting amounts are done to avoid scrutiny and promote the safety of the product as a clear inducement for purchase. This is textbook fraud.

Based on the foregoing, none of Prime's challenges have any merit. Plaintiffs look forward to briefing these issues and the case should proceed on the merits straightaway.

Respectfully,

*/s/ Russell M. Busch*
Russell M. Busch, Esq.

---

[4] Regardless of the timing of the letter, which was appropriate here and is "generally a question for the jury," *Tomasino v. Estee Lauder Cos. Inc.*, 44 F.Supp.3d 251, 260 (E.D.N.Y.2014), a letter may not even be required under New York law. *See, e.g., Neri v. R.J. Reynolds Tobacco Co.*, 2000 WL 33911224, at *19 (N.D.N.Y. Sept. 28, 2000); *Sullivan v. Aventis, Inc.*, 2015 WL 4879112, at *8 (S.D.N.Y. Aug. 13, 2015). And Plaintiffs' pleading itself may constitute pre-suit notice. *See generally* N.Y. U.C.C. § 2–607(3); *Panda Capital Corp. v. Kopo International, Inc.*, 242 A.D.2d 690, 662 N.Y.S.2d 584 (1997).

[5] "A manufacturer, by putting its product in the market for distribution through market channels, represents to all who might buy the product that it is at least merchantable and can reasonably foresee both reliance by buyers and the economic consequences of that reliance." *See Paramount Aviation Corp. v. Agusta*, 288 F.3d 67, 71 (3d Cir. 2002).