UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
IN RE: PRIME ENERGY CONSUMER        :
LITIGATION                          :    Case No. 1:24-cv-02657 (KPF)
                                    :
This Document Relates to:           :
                                    :
All Actions                         :
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEFENDANT PRIME HYDRATION LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**
**THE CONSOLIDATED CLASS ACTION COMPLAINT**


GREENBERG TRAURIG, LLP
Stephen L. Saxl
One Vanderbilt Avenue
New York, New York 10017
(212) 801-9200
saxls@gtlaw.com


*Attorneys for Defendant*
*Prime Hydration LLC*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................................1

THE HISTORY OF THIS ACTION ..............................................................................................5

THE ALLEGATIONS OF PLAINTIFFS' CONSOLIDATED COMPLAINT ............................6

LEGAL STANDARD....................................................................................................................8

ARGUMENT ...............................................................................................................................9

I.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER GBL §§ 349 and 350 ......................9

      A.     Plaintiffs Fail to Allege Any Materially Misleading Conduct................................9

            1.     Plaintiffs Fail to Allege Any Misrepresentation .............................9

            2.     Plaintiffs Fail to Allege a Reasonable Consumer of Prime
                 Energy Would View the Alleged Misrepresentation as
                 Material ......................................................................................12

      B.     Plaintiffs Allege No Actual Injury ........................................................14

            1.     Plaintiffs' Theory That They Would Not Have Purchased
                 Prime Energy But For a Misrepresentation Is Not Actual
                 Injury........................................................................................14

            2.     Plaintiffs Fail to Plead a Plausible Price Premium Theory.............15

            3.     Plaintiffs Fail to Plead Actual Injury Because They Fail to
                 Allege They Drank or Intended to Drink the Prime Energy
                 They Purchased. ........................................................................17

II.     PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF STATE
      CONSUMER FRAUD ACTS....................................................................................18

III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF EXPRESS
      WARRANTY ........................................................................................20

IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUD............................................22

V.     PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT .................23

VI.    PLAINTIFFS LACK STANDING FOR INJUNCTIVE RELIEF CLAIMS ...................24

VII.   DISMISSAL SHOULD BE WITH PREJUDICE.........................................................25

CONCLUSION................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)................................8, 13, 16

*Avery v. State Farm Mutual Auto. Ins. Co.,*
    216 Ill.2d 100, 296 Ill.Dec. 448, 835 N.E.2d 801 (2005)......................................18

*Barker v. Nestle Purina PetCare Co.,*
    601 F. Supp. 3d 464 (E.D. Mo. 2022)........................................................18

*In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs. Litig.,*
    701 F. Supp. 2d 356 (E.D.N.Y. 2010) .......................................................19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................8, 12

*Borenkoff v. Buffalo Wild Wings, Inc.,*
    16-CV-8532 (KBF), 2018 WL 502680 (S.D.N.Y. Jan. 19, 2018)....................15, 16

*Budhani v. Monster Energy Co.,*
    527 F. Supp. 3d 667 (S.D.N.Y. 2021).................................................10, 24

*Campbell v. Drink Daily Greens, LLC,*
    16-CV-7176, 2018 WL 4259978 (E.D.N.Y. Sept. 4, 2018) .................................22

*Carver v. City of New York,*
    621 F.3d 221 (2d Cir. 2010)................................................................24

*Chimienti v. Wendy's Int'l, LLC,*
    22-CV-02880 (HG), 2023 WL 6385346 (E.D.N.Y. Sept. 30, 2023)......................23

*City of Los Angeles v. Lyons,*
    461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)..............................................24

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,*
    752 F.3d 173 (2d Cir. 2014)................................................................25

*Cohen v. JP Morgan Chase & Co.,*
    498 F.3d 111 (2d Cir. 2007)................................................................12

*Cooper v. Samsung Elecs. Am., Inc.,*
    374 Fed. Appx. 250 (3d Cir. 2010) ..........................................................19

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777 (2012) .......................................................................................................23, 24

*Cosgrove v. Oregon Chai, Inc.*,
    520 F. Supp. 3d 562 (S.D.N.Y. 2021) (Failla, J.) ........................................................ 9, 22, 24

*Crichton v. Golden Rule Ins. Co.*,
    576 F.3d 392 (7th Cir. 2009) .............................................................................................18

*Devey v. Big Lots, Inc.*,
    635 F. Supp. 3d 205 (W.D.N.Y. 2022)...............................................................................8, 22

*Dimond v. Darden Rests., Inc.*,
    13 CIV. 5244 KPF, 2014 WL 3377105 (S.D.N.Y. July 9, 2014) (Failla, J.)........................ 15

*Donahue v. Ferolito, Vultaggio & Sons*,
    13 A.D.3d 77, 786 N.Y.S.2d 153 (1st Dep't 2004) ..............................................................14

*Edin v. Kangadis Food Inc.*,
    No. 13 Civ. 2311 (JSR), 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013)..................................14

*Faber v. Metro. Life Ins. Co.*,
    648 F.3d 98 (2d Cir. 2011)....................................................................................................8

*Ferrari v. Best Buy Co.*,
    14-cv-2956 MJD/FLN, 2015 WL 2242128 (D. Minn. May 12, 2015)....................................18

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
    783 F.3d 395 (2d Cir. 2015)................................................................................................22

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)................................................................................................13

*Five for Entm't S.A. v. Rodriguez*,
    877 F. Supp. 2d 1321 (S.D. Fla. 2012) ................................................................................18

*Fuller v. Stop & Shop Supermarket Co. LLC*,
    22-CV-9824 (CS), 2023 WL 8005319 (S.D.N.Y. Nov. 17, 2023) .........................................13

*Gallagher v. Lactalis American Grp., Inc.*,
    22-CV-614 (JLS), 2023 WL 6224881 (W.D.N.Y. Sept. 21, 2023)..................................18, 19

*Georgia Malone & Co. v. Rieder*,
    19 N.Y.3d 511 (2012) .........................................................................................................23

*Gibson v. Bartlett Dairy, Inc.*,
    20CV2848NGGSJB, 2022 WL 784746 (E.D.N.Y. Mar. 15, 2022) .......................................19

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
    98 N.Y.2d 314 (2002) ........................................................................................................9

*Grossman v. GEICO Cas. Co.*,
    No. 21-2789, 2022 WL 1656593 (2d Cir. May 25, 2022) ........................................17

*Grossman v. Simply Nourish Pet Food Co.*,
    516 F. Supp. 3d 261 (E.D.N.Y. Jan. 27, 2021) ........................................................20

*Halim v. KIND LLC*,
    707 F. Supp. 3d 439, 444 (S.D.N.Y. 2023) (Failla, J.) ...........................................8

*Harris v. Mondelez Glob. LLC*,
    19CV2249ERKRER, 2020 WL 4336390 (E.D.N.Y. July 28, 2020) .........................20

*Hawkins v. Coca-Cola Co.*,
    654 F. Supp. 3d 290 (S.D.N.Y. 2023).............................................................11, 20

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender*
    *& Co.*, 37 N.Y.3d 169 (2021) ...................................................................................12

*Hu v. City of N.Y.*,
    927 F.3d 81 (2d Cir. 2019)........................................................................................8

*Kuwaiti Danish Comput. Co. v. Digit. Equip. Corp.*,
    438 Mass. 459, 781 N.E.2d 787 (2003) .................................................................18

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)...............................................................................8, 22

*Lissa Coppola, LLC v. Higbee*,
    No. 19-CV-678, 2020 WL 1154749 (W.D.N.Y. Mar. 10, 2020) .............................13

*Lugones v. Pete and Gerry's Organic, LLC*,
    440 F. Supp. 3d 226 (S.D.N.Y. 2020) (Failla, J.) .............................20, 21, 22, 24, 25

*Lumbra v. Suja Life, LLC*,
    122CV893MADDJS, 2023 WL 3687425 (N.D.N.Y. May 26, 2023) .......................13

*McCabe v. CVS Health Corp.*,
    22CV3116RPKRML, 2023 WL 6385729 (E.D.N.Y. Sept. 29, 2023) ....................15

*McCracken v. Verisma Sys., Inc.*,
    22-2928, 2024 WL 314945 (2d Cir. Jan. 29, 2024).............................................12, 23

*Mid Island LP v. Hess Corp.*,
    983 N.Y.S.2d 204, 2013 WL 6421281 (Sup. Ct. N.Y. Cnty. Dec. 2, 2013)............21

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993)................................................................................8

*Myers v. Wakefern Food Corp.*
    20 CIV. 8470 (NSR), 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022)....................................10, 11

*N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*,
    102 A.D.3d 5, 953 N.Y.S.2d 96 (2d Dep't 2012) ..................................................12

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
    723 F.3d 192 (2d Cir. 2013)................................................................................8

*Nguyen v. Algenist LLC*,
    1:2022cv00013, 2022 WL 17251733 (S.D.N.Y. Nov. 28, 2022) (Failla, J.)......................9, 20

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)..............................................................................24

*O'Neill v. Standard Homeopathic Co.*,
    346 F. Supp. 3d 511 (S.D.N.Y. 2018)................................................................25

*O'Shea v. Littleton*,
    414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ............................................24

*In re OnStar Contract Litig.*,
    600 F. Supp. 2d 861 (E.D. Mich. 2009)............................................................18

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995)........................................................................................17

*Pasternack v. Lab'y Corp. of Am. Holdings*,
    27 N.Y.3d 817 (2016)......................................................................................22

*Perras v. H & R Block*,
    789 F.3d 914 (8th Cir. 2015) ...........................................................................18

*Ritchie v. N. Leasing Sys., Inc.*,
    12-CV-4992 (KBF), 2016 WL 1241531 (S.D.N.Y. Mar. 28, 2016) .......................17

*Rolon* v. *Henneman*,
    517 F.3d 140 (2d Cir. 2008)................................................................................2

*Rouse v. H.B. Fuller Co.*,
    22-CV-2173, 2023 WL 6279373 (D. Minn. Sept. 26, 2023)................................18

*Santiful v. Wegmans Food Markets, Inc.* ("Santiful I"),
    No. 20-CV-2933 (NSR), 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022)..............10, 11

*Santiful v. Wegmans Food Markets, Inc.* ("Santiful II"),
No. 20-CV-2933 (NSR), 2023 WL 2457801 (S.D.N.Y. Mar. 10, 2023)................................10

*Schafer v. Direct Energy Servs., LLC*,
19-CV-6907-FPG, 2022 WL 4922328 (W.D.N.Y. Oct. 4, 2022)............................................17

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*,
No. 15-CV-6549 (CM), 2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018). ...............................19

*Shain v. Ellison*,
356 F.3d 211 (2d Cir. 2004)................................................................................................24

*Shu v. Toyota Motor Sales USA, Inc.*,
3:22-CV-04661-LB, 2023 WL 3028071 (N.D. Cal. Apr. 19, 2023) ......................................18

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43 (1999) ..................................................................................................15, 17

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014)........................................................24

*Thorsen v. Sons of Norway*,
996 F. Supp. 2d 143 (E.D.N.Y. 2014) ...................................................................................25

*Tomasino v. Estee Lauder Cos., Inc.*,
No. 13 Civ. 3692 (ERK) (RML), 2015 WL 4715017 (E.D.N.Y. Aug. 7, 2015) ...................22

*Trader Joe's Co. v. Hallatt*,
835 F.3d 960 (9th Cir. 2016) ..............................................................................................19

*Van Orden v. Hikari Sales U.S.A., Inc.*,
No. 122CV504MADDJS, 2023 WL 5336813 (N.D.N.Y. Aug. 18, 2023)............................19

*Warren v. Coca-Cola Co.*,
22-CV-6907 (CS), 2023 WL 3055196 (S.D.N.Y. Apr. 21, 2023)..........................................13

*Warren v. Whole Foods Mkt. Grp., Inc.*,
574 F. Supp. 3d 102 (E.D.N.Y. 2021) ...............................................................................13

*Weisblum v. Prophase Labs, Inc.*,
88 F. Supp. 3d 283 (S.D.N.Y. 2015)......................................................................................9

*Wheeler v. Topps Co.*,
652 F. Supp. 3d 426 (S.D.N.Y. 2023)...................................................................................21

*Wimberly v. Experian Info. Solutions, Inc.*,
18 CIV. 6058 (KPF), 2019 WL 6895751 (S.D.N.Y. Dec. 18, 2019) (Failla, J.) ......................2

**Statutes**

New York General Business Law § 349 .................................................................................. *passim*

New York General Business Law § 350 .................................................................................. *passim*

N.Y. U.C.C. § 2-607 ...................................................................................................4, 20

**Rules**

Fed. R. Civ. P. 9(b) .........................................................................................4, 8, 22, 25

Fed. R. Civ. P. 12(b)(6) .................................................................................. *passim*

## PRELIMINARY STATEMENT

This is a putative class action lawsuit brought by plaintiffs Lara Vera ("Vera"), Jemirria Thompson ("Thompson"), and Bryant Preudhomme ("Preudhomme" and, together with Vera and Thompson, "Plaintiffs") arising from their purchases of Prime Energy drinks.[1] Vera and Thompson allege that they "read the [Prime Energy] labeling and advertising, including the representation that they contained '200mg of caffeine,'" "relied on this representation," and "either paid a price premium" or "would not have purchased the Products at all had [they] known that this representation was false and misleading." CC ¶¶ 5-6. Preudhomme alleges that he "relied on the packaging in making his purchase" and "would not have purchased [Prime Energy]" or "would have paid less" if the labels stated that they contained more than 200 mg of caffeine. CC ¶ 7.

In a test "commissioned by Plaintiffs' attorneys"—for which no facts have been disclosed despite repeated requests—the tested can (or cans) allegedly had "between 215-225 milligrams of caffeine." CC ¶ 21. That is to say: Plaintiffs allege that they purchased Prime Energy drinks after reading they contained 200 mg of caffeine—and apparently sought drinks containing only 200 mg of caffeine—and now assert a claim for damages because an unidentified test allegedly showed the amount of caffeine in at least one Prime Energy drink was slightly higher. None of the Plaintiffs allege they consumed a Prime Energy drink, how they valued the caffeine content of Prime Energy drinks, or how they were injured due to the alleged surplus of caffeine.

Plaintiffs' claims should be dismissed for failure to plead that the cans they purchased contained more than 200 milligrams of caffeine, that the alleged misstatement was material, or that Plaintiffs suffered any actual injury. These are essential elements of all of Plaintiffs' claims.

---

[1] Defendant Prime Hydration LLC ("Prime") will refer to the Prime Energy drinks identified in paragraph 1 of the Consolidated Class Action Complaint ("CC") [ECF No. 33] as "Prime Energy."

The sole basis for Plaintiffs' assertion that cans they purchased contained excess caffeine is the conclusory testing allegation. CC ¶ 21. But Plaintiffs do not allege: what testing methodology was used; who conducted the testing; when it was conducted; whether the tests were run on cans from the same lots—or even the same flavors—as the cans Plaintiffs purchased; whether the tests were run on one can or multiple cans; when and where the tested cans were manufactured or purchased; and whether Plaintiffs ran tests on a sufficiently representative sample of cans to draw any statistically sound inferences. As this Court has recognized, it "is not bound to accept 'conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Wimberly v. Experian Info. Solutions, Inc.*, 18 CIV. 6058 (KPF), 2019 WL 6895751, at *3 (S.D.N.Y. Dec. 18, 2019) (Failla, J.) (quoting *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)).[2]

Even if the Court were to assume that Plaintiffs consumed the Prime Energy drinks they purchased—and join Plaintiffs in their logical leap from the conclusory testing allegation to the conclusion that the Prime Energy drinks they purchased contained "between 215-225 milligrams of caffeine"—all of Plaintiffs' claims should be dismissed because the difference between 200 and 215-225 milligrams is not ***material*** as a matter of law here. Even taking as true Plaintiffs' subjective allegations that they would not have purchased this ***energy*** drink if they knew it had 7.5% more caffeine than the 200 milligrams they expected, each of their claims requires materiality, which is based on the objectively, reasonable expectations of a consumer of Prime Energy drinks—not Plaintiffs' subjective opinion.

---

[2] Prime first requested that Plaintiffs' counsel provide details of the alleged testing over a year ago, on October 6, 2023, when they made an identical allegation on behalf of a different plaintiff in *Drugas v. Prime Hydration LLC*, Case No. 1:23-cv-08552-KPF (S.D.N.Y.). Despite questioning by this Court on January 10, 2024, Plaintiffs' counsel decided to push forward without disclosing any details of the alleged testing. Prime again requested details of testing on April 2, 2024, before this action was filed. Plaintiffs, nonetheless, have steadfastly refused to provide any information about the alleged testing in their Consolidated Complaint, despite numerous opportunities.

Viewed in context, as it must be, the alleged misstatement was not plausibly material. Common sense confirms that reasonable consumers of Prime Energy drinks were generally *seeking* caffeine. They were purchasing an energy drink named "Prime Energy," and claim they read the labeling and advertising, including a lightning bolt and warnings that Prime Energy is "NOT RECOMMENDED FOR . . . PEOPLE SENSITIVE TO CAFFEINE." CC ¶ 20. And the Consolidated Complaint acknowledges that Red Bull—a competing energy drink—contains only 114 mg of caffeine. CC ¶ 14. It is fair to infer that the reasonable consumer of Prime Energy drinks seeks *more* caffeine. The notion that it was materially misleading to such a consumer that they got a little more of what they wanted cannot support a claim. The Court need not ignore common sense regarding reasonable consumer expectations in determining whether a statement is material. Plaintiffs have failed to plausibly allege that a reasonable consumer would be materially misled if, as alleged, the caffeine content of Prime Energy is just 7.5% to 12.5% higher than the label states.

Plaintiffs also fail to adequately plead injury to support their claims. Plaintiffs allege they would not have purchased Prime Energy drinks had they known of the alleged misrepresentation. But the alleged deception cannot be both the act and the injury, and courts applying New York law regularly dismiss such claims. Further, Plaintiffs cannot plausibly plead a "price premium" theory of damages because they do not explain how a label representation allegedly understating caffeine content by 15 to 25 mg supported a price premium for Prime Energy drinks. If anything, the reasonable Prime Energy consumer would likely view additional caffeine as increasing the value of Prime Energy drinks—or at least not diminishing the value. And the absence of any allegation that Plaintiffs drank (or even intended to drink) the Prime Energy drinks they purchased requires dismissal because Plaintiffs cannot claim they suffered injury by reason of the alleged misrepresentation. For these and other reasons, Plaintiffs' six causes of action fail to state a claim.

**First,** Plaintiffs' claims under New York General Business Law ("GBL") §§ 349 and 350 (Counts II and III) both fail because Plaintiffs fail to plead a materially misleading statement in that: (1) Plaintiffs fail to provide "well-pleaded factual allegations" regarding the testing conducted on the Prime Energy drinks from which the Court could draw any inferences about the caffeine content of the Prime Energy cans Plaintiffs purchased, and (2) Plaintiffs fail to plausibly allege that such a misrepresentation would be material to the reasonable Prime Energy consumer. Even assuming arguendo that the caffeine content of Prime Energy drinks was materially understated, Plaintiffs fail to plead any injury, both by failing to allege that they actually consumed the Prime Energy drinks and by failing to allege facts supporting a cognizable theory of damages.

**Second,** Plaintiffs' claims in Count I ("Violation of State Consumer Fraud Acts") are also based on New York GBL Sections 349 and 350, and thus fail to state a claim. Even if Plaintiffs seek to assert their own claims under any of the other nine states' consumer fraud statutes identified in footnote 17 of the Consolidated Complaint (Dkt. No. 33, p. 12), Plaintiffs fail to plead relevant conduct in those states and thus cannot state a claim. Even if Plaintiffs could sue under those statutes, their claims would fail for the same reasons the GBL §§ 349 and 350 claims fail.

**Third,** Plaintiffs fail to state a claim for breach of express warranty (Count IV) for the same reasons their GBL §§ 349 and 350 claims fail—they fail to plead both a material misrepresentation and an injury caused by that material misrepresentation. In addition, Plaintiffs failed—as a matter of law—to provide adequate notice pursuant to N.Y. U.C.C. § 2-607(3)(a).

**Fourth,** Plaintiffs fail to state a claim for fraud (Count VI) for the same reasons Plaintiffs' GBL Sections 349 and 350 claims fail: failure to plead a misleading statement, materiality, and injury. In addition, Plaintiffs fail to plead with particularity and fail to plead facts that give rise to a strong inference of fraudulent intent by Prime, as required under Rule 9(b).

**Fifth,** not only have Plaintiffs failed to allege unjust conduct, but the unjust enrichment claim (Count V) is also duplicative of Plaintiffs' claims under contract, tort, and statutory theories.

**Sixth**, Plaintiffs' claims for injunctive relief are all deficient as Plaintiffs fail to allege a likelihood of future injury sufficient to support standing.

**Finally,** the Consolidated Complaint should be dismissed ***with prejudice*** because Plaintiffs already amended—after seeing each of the arguments raised herein—and have failed to cure the fundamental deficiencies in their pleading. In any event, amendment would be futile.

## THE HISTORY OF THIS ACTION

Plaintiffs' Consolidated Complaint is virtually identical to the complaint filed over a year ago by the same counsel on behalf of the same putative class in *Drugas v. Prime Hydration LLC*, Case No. 1:23-cv-08552-KPF (S.D.N.Y.). Two days before Prime's motion to dismiss deadline in *Drugas*, counsel notified Prime that Drugas sought to withdraw and that Vera had agreed to be the named plaintiff. Prime did not consent and Drugas filed a notice of voluntary dismissal.

Plaintiffs' counsel filed the *Vera* Complaint on April 8, 2024. [ECF No. 1]. Counsel for Prime requested that Plaintiffs' counsel dismiss this action noting that Vera's only alleged purchases were in 2022, before Prime Energy was first available for purchase. On May 7, 2024, Plaintiffs filed the Amended Complaint adding Thompson and asserting that Vera purchased Prime Energy in 2023. [ECF No. 12]. Prime filed a pre-motion letter recounting this history and seeking leave to file a motion to dismiss. [ECF No. 14]. Plaintiffs responded, electing to stand on their Amended Complaint. Prime filed its Motion to Dismiss on June 21, 2024. [ECF Nos. 17, 19-21].

Meanwhile, Preudhomme filed a substantively identical Complaint in *Preudhomme v. Prime Hydration LLC*, Case No. 1:24-cv-03568-KPF (S.D.N.Y.). Prime filed a Letter Motion for Transfer as Related Case which this Court granted on June 24, 2024. [ECF No. 22]. The Consolidated Complaint was filed on September 17, 2024. [ECF No. 33].

5

## THE ALLEGATIONS OF PLAINTIFFS' CONSOLIDATED COMPLAINT[3]

Despite pages of irrelevant factual allegations and legal conclusions, all of Plaintiffs' arguably relevant factual allegations can be found in just eight paragraphs. *See* CC ¶¶ 1, 5-7, 12, 14, 20, 21. Vera purchased the Blue Raspberry flavored Prime Energy "several times in 2023." CC ¶ 5. The last time she recalls purchasing Prime Energy "was in July or August 2023." *Id.* She "paid approximately $3.00 or $4.00 for each" can. *Id.* Thompson purchased undisclosed flavors of Prime Energy "several times in 2023." CC ¶ 6. Her most recent purchase of Prime Energy was "on April 14, 2024," six days after the commencement of this action, "when she purchased two 24-count cases" and "paid approximately $1.45 for each" can of Prime Energy. *Id.* Both Vera and Thompson allege that, "[p]rior to purchase, Plaintiff read the Products' labeling . . ., including the representation that it contained '200mg of caffeine.'"[4] CC ¶¶ 5, 6.

Preudhomme generally alleges that "[d]uring the applicable statute of limitations period, [he] purchased in New York several of the Products." CC ¶ 7. Preudhomme generally alleges that he "relied on the packaging," but does not allege that he read the representation that Prime Energy contained 200 mg of caffeine. *Id.* Preudhomme alleges that he "paid up to the regular retail price for" Prime Energy, but does not allege how much he paid. *Id.* Because Preudhomme never actually alleges that he read the caffeine content of Prime Energy, he alleges that he was injured by paying "a price premium for the Products that did not deliver what Defendant promised." *Id.*

Plaintiffs note that Prime sells a line of hydration drinks which do not contain caffeine, and the Prime Energy drinks at issue here which, "according to Defendant, contain 200 milligrams of

---

[3] The following statement is taken from the allegations in the Consolidated Complaint, which are assumed to be true solely for purposes of this motion to dismiss.

[4] Plaintiffs also generally aver that they "carefully read the Products' . . . advertising," but this allegation is so broad and conclusory as to be meaningless. CC ¶¶ 5, 6.

caffeine" per 12-ounce can. CC ¶ 12. Plaintiffs allege a 12-ounce can of a Prime Energy drink has about the same amount of caffeine as two cups of coffee. CC ¶ 14.[5]

As Plaintiffs note, Prime Energy's label "plainly states that it contains '200mg of caffeine.'" CC ¶ 20. Plaintiffs, however, state in a conclusory fashion that "based upon testing commissioned by Plaintiffs' attorneys, the Products actually contain between 215-225 milligrams of caffeine rather than the advertised 200 milligrams." CC ¶ 21.

Notably, the Consolidated Complaint does not allege either that Plaintiffs purchased Prime Energy to drink or that they actually drank the Prime Energy they purchased. And while the Consolidated Complaint contains a formulaic recitation that Plaintiffs "would not have purchased the Products had [they] known that this representation was false and misleading," it does not allege that Plaintiffs specifically sought a drink containing no more than 200 mg of caffeine. CC ¶¶ 5-7.

Plaintiffs assert that on March 4, 2024, "Plaintiffs' counsel sent Defendant a pre-suit notice letter, via certified mail return receipt requested." CC ¶ 70 Prime has attached a copy of that letter as Exhibit A to the accompanying Declaration of Stephen Saxl. That letter was sent on behalf of Vera alone and referred only to purchases of Prime Energy drinks in June and August of 2022. This is notable as Prime Energy was neither available for purchase nor publicly announced until 2023—months after Vera allegedly purchased Prime Energy. After Prime brought this to Plaintiffs' counsel's attention, Plaintiffs alleged that Vera received a "case of the Product, which she believes was through a promotion" in or around August 2022, presumably received free of charge. CC ¶ 5. Plaintiffs do not allege that they provided pre-suit notice regarding any of the purchases alleged in the Consolidated Complaint.

---

[5] While asserting that the caffeine content is "about two cups of coffee," 215-225 milligrams is less than a single "tall" (12 oz.) size of Starbucks Pike Place Roast coffee (235-290 milligrams). *See* https://www.starbucks.com/menu/product/480/hot/nutrition (visited October 7, 2024).

## <u>LEGAL STANDARD</u>

This Court has, on numerous occasions, set forth the governing legal standards for resolving motions to dismiss for failure to state a claim:

> In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "draw all reasonable inferences in [p]laintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "In deciding a Rule 12(b)(6) motion, the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken." *Hu v. City of N.Y.*, 927 F.3d 81, 88 (2d Cir. 2019) (quoting *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).
>
> . . .
>
> "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

*Halim v. KIND LLC*, 707 F. Supp. 3d 439, 444 (S.D.N.Y. 2023) (Failla, J.).

When pleading a claim for fraud Fed. R. Civ. P. 9(b) requires that Plaintiffs must "state with particularity the circumstances constituting the fraud." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197-98 (2d Cir. 2013) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). In addition, "a plaintiff must allege facts that give rise to a 'strong inference of fraudulent intent,' either by alleging facts showing that the defendant had the motive and opportunity to commit fraud, or by alleging 'facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Devey v. Big Lots, Inc.*, 635 F. Supp. 3d 205, 217-18 (W.D.N.Y. 2022) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)).

## ARGUMENT

### I.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER GBL §§ 349 AND 350.

Plaintiffs' claims under Sections 349 and 350 of New York's General Business Law require that Plaintiffs "allege [i] that the defendant ... engaged in consumer-oriented conduct; [ii] that the conduct was materially misleading; and [iii] that the plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (Failla, J.) (quoting *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015)).[6] Plaintiffs fail to adequately allege materially misleading conduct because they fail to allege either that the labels on the Prime Energy drinks they purchased misrepresented the caffeine content of *those* cans or that any alleged misrepresentation would have been material to a reasonable consumer. Plaintiffs also fail to allege that they suffered an actual injury as a result of the allegedly deceptive act or practice.

#### A.    Plaintiffs Fail to Allege Any Materially Misleading Conduct.

##### 1.    Plaintiffs Fail to Allege Any Misrepresentation.

Plaintiffs' entire case is premised on a single allegation that, "based upon testing commissioned by Plaintiffs' attorneys, the Products actually contain between 215-225 milligrams of caffeine rather than the advertised 200 milligrams." CC ¶ 21. This allegation falls well short of providing "well-pleaded factual allegations" from which the Court could infer *anything* about the caffeine contents of the specific cans of Prime Energy drinks that each of the three Plaintiffs allegedly purchased. Thus, Plaintiffs fail to plead any misrepresentation.

---

[6] "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349." *Cosgrove*, 520 F. Supp. 3d at 575 (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)). Because this Court typically "merge[s] its analysis of the two claims," Prime will analyze these two counts together. *Id.*; *see also Nguyen v. Algenist LLC*, 1:2022cv00013, 2022 WL 17251733, at *5 (S.D.N.Y. Nov. 28, 2022) (Failla, J.).

In *Myers v. Wakefern Food Corp.*, the court granted defendant's motion to dismiss on a similar basis. There, the plaintiff "allege[d] that laboratory testing of the Product in 2020 revealed that 'the amount of vanillin was disproportionately greater than if it was only present due to extracts from the vanilla bean.'" 20 CIV. 8470 (NSR), 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022). The plaintiff further identified key compounds from the vanilla plant that were purportedly identified as missing in the laboratory testing. *Id.* The *Myers* court, however, found these allegations insufficient as the plaintiff "fail[ed] to provide any details whatsoever about [what] this laboratory test entailed." *Id.* In particular, the plaintiff failed to: "describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc." *Id.* (citing *Santiful v. Wegmans Food Markets, Inc.* ("Santiful I"), No. 20-CV-2933 (NSR), 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022)).

The *Santiful* plaintiff similarly alleged that lab testing showed that the product at issue was made from non-vanilla sources. *Santiful I*, 2022 WL 268955, at *4. The *Santiful* court held that the allegations regarding the lab testing were insufficient to state a claim, noting that plaintiff did not provide any "information as to the testing methodology, the date, time, or place of the testing, who conducted the testing, and what the exact product tested was." *Id. See also Santiful v. Wegmans Food Markets, Inc.* ("Santiful II"), No. 20-CV-2933 (NSR), 2023 WL 2457801, at *4 (S.D.N.Y. Mar. 10, 2023) (dismissing Second Amended Complaint on similar grounds).

While courts in this district accept the well-pleaded factual allegations of the complaint regarding testing, they then carefully evaluate what the court can—and cannot—infer. *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 682 (S.D.N.Y. 2021). In evaluating allegations of testing, the court must carefully identify the line between reasonable inference and rank speculation. *Id.* (determining what reasonable inferences the court could make and stating that

"[a]ny other inference is purely speculation"). Allegations—"without any support—that amorphous 'laboratory analysis' concluded that the Product contained" a specific amount of caffeine "are a far cry from raising 'any factually substantiated allegations'" of that fact. *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 306 (S.D.N.Y. 2023). In this case, as in *Myers*, *Santiful I*, and *Hawkins*, Plaintiffs have failed to provide any information regarding the testing methodology, when and where the test took place, the qualifications of the testers, and what Prime Energy drinks were tested—both which flavors and which lots. *See Myers*, 2022 WL 603000, at *4; *Santiful I*, 2022 WL 268955, at *4; and *Hawkins*, 654 F. Supp. 3d at 306.

Plaintiffs have failed to include any allegations about how many cans of the Prime Energy drink were tested, when they were manufactured, when and where they were purchased, and how the cans were selected for testing. This information is vital for the Court to make *any* inferences regarding the caffeine content of the Prime Energy drinks Plaintiffs allegedly purchased. If Plaintiffs had tested the cans of Prime Energy which Plaintiffs purchased, the Court would not be required to make any inferences. If Plaintiffs tested a single can of a flavor which Plaintiffs did not purchase, then making any inference regarding the caffeine content of the cans Plaintiffs purchased would be entirely speculative. Thompson, for example, alleged that she purchased Prime Energy drinks in April 2024, after this action was commenced, and after Plaintiffs' counsel filed a nearly identical complaint with an identical testing allegation on September 29, 2023. *Drugas v. Prime Hydration LLC*, Case No. 1:23-cv-08552-KPF [ECF No. 1]. The most reasonable inference is that these complaints are based on the same unidentified testing. Regardless, the Court has no information from which it can make any inference regarding the timing of the testing or whether the Prime Energy drinks tested were manufactured in the same month—or year—as any or all of the Plaintiffs' cans, much less in the same lot.

Even accepting Plaintiffs' allegation regarding testing as true and assuming *arguendo* that a plausibly acceptable methodology was used, the broadest inference that can be drawn from Plaintiffs' testing allegation—before straying into the realm of rank speculation—is that a single unidentified lot of Prime Energy has at least 215 mg of caffeine.[7] Without more, the Court would be required to engage in speculation regarding both the testing and the caffeine content of the Prime Energy drinks Plaintiffs purchased. Plaintiffs fail to adequately allege the labels *on the cans they purchased* misrepresented the caffeine content *in the cans they purchased*. Plaintiffs' allegations are not "sufficient to raise a right to relief above the speculative level" and the Consolidated Complaint should be dismissed. *Twombly*, 550 U.S. at 555.

## 2.    Plaintiffs Fail to Allege a Reasonable Consumer of Prime Energy Would View the Alleged Misrepresentation as Material.

Even if Plaintiffs adequately pled that the cans each of them purchased contained 215 to 225 milligrams of caffeine, they fail to plausibly allege that such a misrepresentation would be material to the reasonable Prime Energy drink consumer, as GBL Sections 349 and 350 require. The Second Circuit has held that "[a] defendant's actions are materially misleading when they are likely to mislead a reasonable consumer acting reasonably under the circumstances." *McCracken v. Verisma Sys., Inc.*, 22-2928, 2024 WL 314945, at *3 (2d Cir. Jan. 29, 2024) (quoting *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 178 (2021)). Put another way, a misrepresentation is materially misleading where it "would have caused them to make a different initial choice." *Id.* (citing *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 953 N.Y.S.2d 96, 102 (2d Dep't 2012)). The Court's inquiry into whether a misrepresentation is material "is 'objective,' and a court may decide whether

---

[7] Plaintiffs' testing gives a range of ±5 mg, raising additional questions about its accuracy.

conduct is materially misleading as a matter of law." *Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F. Supp. 3d 102, 114 (E.D.N.Y. 2021) (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (citing *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).

The inquiry, then, is whether a "reasonable [Prime Energy drink] consumer acting reasonably" would believe that the caffeine content being 15 to 25 mg *higher* than stated on the label would materially *decrease* the value of the Prime Energy drinks. The Court can determine the plausibility of such allegations on a motion to dismiss and should "rely on common sense observations and judicial experience." *Lumbra v. Suja Life, LLC*, 122CV893MADDJS, 2023 WL 3687425, at *3-*5 (N.D.N.Y. May 26, 2023) (dismissing GBL § 349 and § 350 claims which were "plainly inconsistent with common sense"). *See also Warren v. Coca-Cola Co.*, 22-CV-6907 (CS), 2023 WL 3055196, at *2 (S.D.N.Y. Apr. 21, 2023) ("Deciding whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'") (quoting *Iqbal*, 556 U.S. at 679); *Fuller v. Stop & Shop Supermarket Co. LLC*, 22-CV-9824 (CS), 2023 WL 8005319, at *5 (S.D.N.Y. Nov. 17, 2023) ("A reasonable consumer for purposes of a GBL ... analysis does not lack common sense and is not assumed to be the least sophisticated consumer.") (quoting *Lissa Coppola, LLC v. Higbee*, No. 19-CV-678, 2020 WL 1154749, at *8 (W.D.N.Y. Mar. 10, 2020)).

Applying common sense, the allegations of the Consolidated Complaint in this context confirm that, regardless of what Plaintiffs wanted, reasonable consumers of Prime Energy were generally *seeking* more caffeine, not less. They were purchasing an energy drink named "Prime Energy" (not Prime's hydration drink), in a can which depicts a lightning bolt paired with the text "200 mg Caffeine" and contains a warning that it is "NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE, PEOPLE SENSITIVE TO CAFFEINE, PREGNANT WOMEN

OR WOMEN WHO ARE NURSING". CC ¶¶ 12, 20. Plaintiffs acknowledge that Prime Energy's label disclosed that it contains notably more caffeine than other energy drinks such as Red Bull. CC ¶ 14. Thus, contrary to Plaintiffs' theory, this would suggest that consumers who are reading the caffeine disclosures and choosing Prime Energy over Red Bull or certain other energy drinks are likely opting for Prime Energy because of its higher caffeine content. Indeed, Plaintiffs include a conclusory allegation that "[i]t is axiomatic that the amount of reported caffeine . . . [is] material to any consumer seeking to purchase an energy drink." CC ¶ 18. In this context, it is common sense that reasonable Prime Energy drink consumers, acting reasonably under the circumstances, would not view a small surplus of the caffeine they seek (15 to 25 mg, *i.e.*, 7.5% to 12.5%) as materially *impairing* the value of the Prime Energy drinks.

Other than their supposed personal preference, Plaintiffs allege no facts which would suggest this alleged difference was material to the reasonable Prime Energy drink consumer, purchasing an energy drink for caffeine to enhance their energy. Even if a 12 oz Prime Energy contained the 215-225 milligrams alleged, the caffeine would still be less than a 12 oz Starbucks Pike Place Roast brewed coffee (which ranges from 235 to 290 milligrams). *See* https://www.starbucks.com/menu/product/480/hot/nutrition (visited October 7, 2024). In this context, Plaintiffs have not pled a plausible claim that an extra 15 to 25 mg of caffeine in a 200 mg energy drink would be material to the reasonable Prime Energy consumer.

### B. Plaintiffs Allege No Actual Injury.

#### 1. Plaintiffs' Theory That They Would Not Have Purchased Prime Energy But For a Misrepresentation Is Not Actual Injury.

Plaintiffs' theory of injury is that they "would not have purchased the Products had [they] known that this representation [of 200 mg of caffeine] was false and misleading," and, as a result, they were "damaged . . . in the full amount of the purchase price of the Products." CC ¶¶ 5-7, 50,

58. But "[u]nder § 349, deception and injury must be separately pled." *Dimond v. Darden Rests., Inc.*, 13 CIV. 5244 KPF, 2014 WL 3377105, at *9 (S.D.N.Y. July 9, 2014) (Failla, J.) (citing *Edin v. Kangadis Food Inc.,* No. 13 Civ. 2311 (JSR), 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013)); *see also Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 78, 786 N.Y.S.2d 153, 154 (1st Dep't 2004) (affirming dismissal of claim that did not sufficiently allege "that the cost of the beverages was inflated by these misrepresentations or that their health was adversely affected").

To allege an actual or pecuniary harm as required to plead claims under GBL §§ 349 and 350, Plaintiffs must allege more than "that they would not have purchased absent a manufacturer's deceptive commercial practices." *Dimond*, 2014 WL 3377105, at *9 (quoting S*mall v. Lorillard Tobacco Co.,* 94 N.Y.2d 43, 56 (1999)). "[C]ourts in this circuit and New York state courts regularly dismiss common-law fraud and New York General Business Law claims" based on a theory "that 'they never would have purchased' an item were it not for a fraudulent statement." *McCabe v. CVS Health Corp.*, 22CV3116RPKRML, 2023 WL 6385729, at *5 (E.D.N.Y. Sept. 29, 2023) (collecting cases) (quoting *Small*, 94 N.Y.2d at 56). Indeed, this Court has held that such an allegation "'contain[s] no manifestation of either pecuniary or actual harm,' because their GBL § 349 cause of action set forth 'deception as both act and injury.'" *Dimond*, 2014 WL 3377105, at *9 (quoting *Small*, 94 N.Y.2d at 56).

### 2.    Plaintiffs Fail to Plead a Plausible Price Premium Theory.

While a properly pled price premium theory may support the actual or pecuniary harm required to state a claim, Plaintiffs fail to plead a plausible price premium theory. Plaintiffs invoke the phrase "price premium" as an alternate theory of damages in the GBL §§ 349 and 350 claims, but only in a purely conclusory way: "Plaintiffs and members of the New York Subclass were injured because . . . they paid a price premium for the Products based on Defendant's

Misrepresentations." CC ¶¶ 50, 58; *see also* CC ¶¶ 5-7. Vague assertions that "plaintiff paid a 'premium' for the . . . items" are insufficient. *Borenkoff v. Buffalo Wild Wings, Inc.*, 16-CV-8532 (KBF), 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018). Instead, Plaintiffs must allege facts showing that they each were "harmed by the [drink] items she received, that those items were defective in any way, or that the price of the [drink] items was inflated as a result of" the alleged misrepresentation. *Id.*

      Plaintiffs do not allege that the price of Prime Energy drink was inflated by the representation that it contained "200 mg" of caffeine and would have been lower had the label said "215-225 mg." Indeed, as in *Borenkoff*, Plaintiffs have not pled "how the [alleged deceptive conduct] affects the objective economic value of the [drink] items [they] received. Accordingly, [their] invocation of the word 'premium' is nothing more than a 'legal conclusion couched as a factual allegation,' and that allegation is insufficient to state a claim for relief that is 'plausible on its face.'" *Id.* (quoting *Iqbal*, 566 U.S. at 678) (emphasis in original). Nor could they in this circumstance. Plaintiffs do not explain how a label representation which allegedly ***understates*** the caffeine content that Prime Energy consumers sought by 15 to 25 mg "affects the objective value" of Prime Energy drinks. If anything, one might conclude that a purchaser of Prime Energy cans might pay more, not less, for more caffeine. Moreover, Plaintiffs' own allegations weigh *against* any theory that a small surplus of caffeine would impair the objective value of Prime Energy drinks. Plaintiffs allege that the Prime Energy label shows that it contains more caffeine than other energy drinks, such as Red Bull. CC ¶ 14. This more likely than not indicates that consumers who choose Prime Energy over Red Bull place more value on higher caffeine content.

3.    **Plaintiffs Fail to Plead Actual Injury Because They Fail to Allege They Drank or Intended to Drink the Prime Energy They Purchased.**

Plaintiffs' failure to allege that they drank—or even intended to drink—the Prime Energy they purchased is an additional reason they fail to adequately plead injury. Even if Plaintiffs could plausibly claim injury based on the alleged misrepresentation or a price premium theory (and they cannot), they still must allege that they were "injured by reason thereof." *Small*, 94 N.Y.2d at 55. "[T]he "injury" component of a Section 349 [and 350] claim constitutes a 'causation requirement: [t]he plaintiff must show that the defendant's material deceptive act caused the injury.'" *Schafer v. Direct Energy Servs., LLC*, 19-CV-6907-FPG, 2022 WL 4922328, at *5 (W.D.N.Y. Oct. 4, 2022), *aff'd*, 22-2889, 2023 WL 7485470 (2d Cir. Nov. 13, 2023) (quoting *Grossman v. GEICO Cas. Co.*, No. 21-2789, 2022 WL 1656593, at *3 (2d Cir. May 25, 2022)).

If, for example, Plaintiffs purchased the Prime Energy drinks for the purpose of "shar[ing] it with [their] co-workers," as Vera alleges she shared the promotional case she claims to have received, then they could not have suffered an injury as a result of the alleged label misrepresentation. CC ¶ 5. While the Court is required to accept as true the well pleaded factual allegations of the Consolidated Complaint, it is not required to assume facts that are not alleged. Here, Plaintiffs fail to plead any facts which support the conclusion that either of them "suffered injury as a result of defendants' allegedly deceptive practices," and, for that reason, too, their GBL §§ 349 and 350 claims should be dismissed. *Ritchie v. N. Leasing Sys., Inc.*, 12-CV-4992 (KBF), 2016 WL 1241531, at *21 (S.D.N.Y. Mar. 28, 2016), *aff'd sub nom. Ritchie v. Taylor*, 701 Fed. Appx. 45 (2d Cir. 2017) (citing *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)).

In sum, Plaintiffs have failed to adequately allege that they suffered any actual or pecuniary harm, that the label on the Prime Energy cans Plaintiffs purchased contained misrepresentations,

or that the alleged misrepresentations would be material to a reasonable consumer. Plaintiffs'

claims under GBL §§ 349 and 350 should be dismissed for each of these reasons.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF STATE CONSUMER FRAUD ACTS.

Plaintiffs' own claim in Count I ("Violation of State Consumer Fraud Acts") is presumably

based on New York GBL Sections 349 and 350, and thus fails to state a claim for the reasons set

forth above (Point I).[8]

To the extent Plaintiffs, each a New York resident (CC ¶¶ 5-7) suing a defendant organized

under the laws of Delaware with its principal place of business in Kentucky (CC ¶ 8), seek to assert

a claim under any of the other nine states' consumer fraud statutes identified in footnote 17 of the

Consolidated Complaint (CC at p. 12 n. 17), Plaintiffs cannot state a claim because they do not

allege that any relevant conduct occurred in any of those states.[9] *See Gallagher v. Lactalis*

---

[8] The question under Rule 12(b)(6) is whether Plaintiffs state a claim. It is premature to determine whether they could represent a putative class of residents of certain states other than New York, as they ultimately seek under Count I.

[9] *See Shu v. Toyota Motor Sales USA, Inc.*, 3:22-CV-04661-LB, 2023 WL 3028071, at *11 (N.D. Cal. Apr. 19, 2023) ("New York plaintiffs cannot assert a UCL claim if the misconduct did not occur [in California].") (**California law**), *appeal dismissed,* 23-15717, 2023 WL 5125075 (9th Cir. July 20, 2023); *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012) ("FDUTPA applies only to actions that occurred within the state of Florida.") (**Florida law**); *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) ("[F]or a nonresident plaintiff to have standing under the Act, the court required that 'the circumstances that relate to the disputed transaction occur primarily and substantially within Illinois.'") (**Illinois law**) (quoting *Avery v. State Farm Mutual Automobile Ins. Co.,* 216 Ill.2d 100, 296 Ill.Dec. 448, 835 N.E.2d 801 (2005)); *Kuwaiti Danish Comput. Co. v. Digit. Equip. Corp.,* 438 Mass. 459, 781 N.E.2d 787, 799 (2003) (to state a claim under M.G.L. c. 93A, a plaintiff must allege that "the center of gravity of the circumstances that give rise to the claim [occurred] primarily and substantially within the Commonwealth [of Massachusetts]") (**Massachusetts law**); *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 866 (E.D. Mich. 2009) ("[N]amed Plaintiffs, who all reside outside of Michigan and purchased or leased their vehicles outside of Michigan, cannot pursue a class action MCPA claim because the statute, by its express terms, limits such a class to persons residing or injured in Michigan.") (**Michigan law**); *Rouse v. H.B. Fuller Co.*, 22-CV-2173 (WMW/JFD), 2023 WL 6279373, at *4 (D. Minn. Sept. 26, 2023) ("[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury.") (**Minnesota**

*American Grp., Inc.*, 22-CV-614 (JLS), 2023 WL 6224881, at *4 (W.D.N.Y. Sept. 21, 2023) ("[B]ecause [Plaintiff] neither resides in, nor alleges that she purchased [the product] within [the Multi-State Class states] she lacks standing to assert claims under the consumer protection statutes of those states.").

Moreover, even if Plaintiffs could sue under any of those statutes, they fail to state a claim for the same reasons the GBL §§ 349 and 350 claims fail. *See supra*, Point I. *See also Gibson v. Bartlett Dairy, Inc.*, 20CV2848NGGSJB, 2022 WL 784746, at *10 (E.D.N.Y. Mar. 15, 2022) ("Nothing . . . precludes a defendant from moving to dismiss a CAFA Plaintiff's claims under a particular statute pursuant to Rule 12(b)(6), on the grounds that the plaintiff fails to state a claim for its own account.") (quoting *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, No. 15-CV-6549 (CM), 2018 WL 7197233, at *21 (S.D.N.Y. Dec. 26, 2018)). "[P]laintiffs cannot use class actions to escape pleading requirements." *Gibson*, 2022 WL 784746, at *10 (quoting *In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs. Litig.*, 701 F. Supp. 2d 356, 378 (E.D.N.Y. 2010)). Plaintiffs characterize those statutes as "similar" to New York's. CC at p. 9 n. 16. A common feature of "consumer protection statutes from states across the country" is "whether a reasonable consumer would be misled by a defendant's statement." *Gallagher*, 2023 WL 6224881, at *4 (quoting *Van Orden v. Hikari Sales U.S.A., Inc.*, No. 122CV504MADDJS,

---

**law**) (quoting *Ferrari v. Best Buy Co.*, 14-cv-2956 MJD/FLN, 2015 WL 2242128, at *9 (D. Minn. May 12, 2015)); *Barker v. Nestle Purina PetCare Co.*, 601 F. Supp. 3d 464, 469 (E.D. Mo. 2022) ("To run afoul of the MMPA, a practice 'must involve trade or commerce in or from the state of Missouri.'") (**Missouri law**) (quoting *Perras v. H & R Block*, 789 F.3d 914, 918 (8th Cir. 2015)); *Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250, 255 (3d Cir. 2010) (Plaintiff "is not entitled to sue under the New Jersey consumer fraud statute" where "[t]he transaction in question bears no relationship to New Jersey other than the location of Samsung's headquarters.") (**New Jersey law**); *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 977 (9th Cir. 2016) (declining to apply the Washington CPA where none of the defendants are Washington residents and none of the alleged conduct occurred in Washington) (**Washington law**).

2023 WL 5336813, at *6 (N.D.N.Y. Aug. 18, 2023)). In *Harris v. Mondelez Glob. LLC*, the court collected cases showing that every state identified in Count I of the Complaint applies the reasonable consumer standard in evaluating consumer fraud claims. 19CV2249ERKRER, 2020 WL 4336390, at *2 n.4 (E.D.N.Y. July 28, 2020) (collecting cases). As shown above, Plaintiffs fail to plead a materially misleading statement. *See supra*, Point I(A). Moreover, each of Plaintiffs' claims requires a cognizable injury, which Plaintiffs also fail to plead. *See supra*, Point I(B).

## III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF EXPRESS WARRANTY.

"To adequately state a claim for breach of an express warranty under New York law, the plaintiff must plead '[i] a *material statement* amounting to a warranty; [ii] the buyer's *reliance* on this warranty as a basis for the contract with his immediate seller; [iii] the *breach* of this warranty; and [iv] injury to the buyer *caused* by the breach.'" *Nguyen*, 2022 WL 17251733, at *10 (quoting *Lugones v. Pete and Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 235 (S.D.N.Y. 2020) (Failla, J.)) (emphasis in original). As shown above in Points I.A and I.B, Plaintiffs fail to plead a material misrepresentation—that is to say a warranty and a breach of that warranty—or any actual injury caused by that breach, and thus fail to state a claim for breach of warranty.

In addition, Plaintiffs' claim fails as a threshold matter because they failed—as a matter of law—to provide adequate pre-litigation notice, as required by N.Y. U.C.C. § 2-607(3)(a). "To satisfy this notice requirement, a plaintiff must 'alert [the] defendant that the transaction was troublesome.'" *Hawkins*, 654 F. Supp. 3d at 307 (quoting *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 282 (E.D.N.Y. Jan. 27, 2021)). In this case, Plaintiffs assert that on March 4, 2024, "Plaintiffs' counsel sent Defendant a pre-suit notice letter, via certified mail return receipt requested." CC ¶ 70. A copy of that letter is attached as Exhibit A to the accompanying Declaration of Stephen Saxl. The only allegedly "troublesome" transaction identified in that letter

was a supposed purchase by Vera at a time when Prime Energy drinks were not yet on the market and which the Consolidated Complaint now alleges Vera "received . . . through a promotion," presumably for free. CC ¶ 5. As a result, the letter Plaintiffs rely upon does not alert Prime of *any* troublesome transaction—let alone any of the particular purchases underlying the Consolidated Complaint.

In their response to Prime's pre-motion letter—prior to consolidation—Plaintiffs argued that "a letter may not even be required under New York law." [ECF No. 17, at 3 n.4 (May 23, 2024)]. This Court has analyzed whether the mere filing of a complaint is adequate notice and has ruled that "Plaintiff[] must allege some form of timely, pre-litigation notice." *Lugones*, 440 F. Supp. 3d at 244-45 (dismissing a breach of express warranty claim "for failure to provide timely notice"). Providing "timely notice is a condition *precedent* to bringing an action for breach of warranty." *Id.* at 244–45 (emphasis in original) (quoting *Mid Island LP v. Hess Corp.*, 983 N.Y.S.2d 204 (Table), 2013 WL 6421281 (Sup. Ct. N.Y. Cnty. Dec. 2, 2013)). The filing of a complaint cannot satisfy a condition precedent to its own filing.

This Court has also analyzed Plaintiffs' claimed exceptions regarding retail sales and products that are edible and held "that it is inapplicable where, as here, Plaintiffs have not alleged any physical or personal injury as a result of Defendant's alleged breach." *Lugones*, 440 F. Supp. 3d at 245. Indeed, the "dominant" view is that "to the extent the[] decisions create an exception to the notice requirement for breach of warranty claims, their reasoning relies on the physical harm suffered by plaintiffs that made their case more like a tort than a contract dispute." *Wheeler v. Topps Co.*, 652 F. Supp. 3d 426, 434 (S.D.N.Y. 2023) (collecting cases). "[E]ven the case to which Plaintiffs cite notes that this exception to the notice requirement only seems to apply in circumstances where 'a breach of a contract claim amounted to a tort claim in which the plaintiff

suffered some personal injury.'" *Lugones*, 440 F. Supp. 3d at 245 (quoting *Tomasino v. Estee Lauder Cos., Inc.*, No. 13 Civ. 3692 (ERK) (RML), 2015 WL 4715017, at *4 (E.D.N.Y. Aug. 7, 2015)). No such injury is alleged here.

Because Plaintiffs failed to provide adequate pre-suit notice to Prime—and for all of the additional reasons set forth above—Plaintiffs' express warranty claim should be dismissed.

## IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUD.

Plaintiffs' fraud claim (Count VII) fails to state a claim for the same reasons as the GBL §§ 349 and 350 claims. "To state a claim for fraud under New York law, a plaintiff must allege '(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff.'" *Campbell v. Drink Daily Greens, LLC*, 16-CV-7176, 2018 WL 4259978, at *6 (E.D.N.Y. Sept. 4, 2018) (holding that where a plaintiff failed to adequately allege that a statement was "materially misleading" under GBL §§ 349 and 350, his "fraud claim flounders on the first element") (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015)). *See also Cosgrove*, 520 F. Supp. 3d at 587 (citing *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 827 (2016)).

As shown above in Point I, Plaintiffs fail to plead a misrepresentation, materiality, or an injury caused by that misrepresentation. *See* Point I, *supra.* For each of these reasons, Plaintiffs fail to state a claim for fraud.

Plaintiffs' fraud claim "must also satisfy the heightened pleading requirements of Rule 9(b)." *Cosgrove*, 520 F. Supp. 3d at 587. In particular, Plaintiffs are required to plead facts "that give rise to a 'strong inference of fraudulent intent.'" *Devey*, 635 F. Supp. 3d at 217–18 (quoting *Lerner*, 459 F.3d at 290-91). Plaintiffs have "not set forth any facts that establish a fraudulent motive on the part of the defendant, or that strongly suggest reckless disregard for accurate

labeling." *Id.* at 218. Indeed, Plaintiffs have not even alleged any facts which would allow the Court to draw a reasonable inference that Prime knew that the caffeine disclosure was not correct, nor that Prime would have intentionally understated the amount of caffeine to energy drink purchasers. For these additional reasons, too, Plaintiffs' fraud claim should be dismissed.

## V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT.

Plaintiffs' unjust enrichment claim (Count V) fails to state a claim both because it is duplicative of Plaintiffs' other claims and for the same reasons those other claims fail, including that they have failed to allege that the caffeine disclosure on the Prime Energy drinks was materially inaccurate or that they were injured. *See* Point I, *supra.*

"The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in equity and good conscience should be paid to the plaintiff. [U]njust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *McCracken*, 2024 WL 314945, at *4 (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)). "[T]o adequately plead such a claim, the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Id.* (quoting *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012)). Plaintiffs fail to plead any conduct by Prime that would make it "against equity and good conscience to permit" Prime to retain any benefit.

In addition, Plaintiffs' unjust enrichment claim fails as it is duplicative of Plaintiffs' claims under contract, tort, and statutory theories. *Chimienti v. Wendy's Int'l, LLC*, 22-CV-02880 (HG), 2023 WL 6385346, at *8 (E.D.N.Y. Sept. 30, 2023) (Unjust enrichment is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the

plaintiff.") (quoting *Corsello*, 18 N.Y.3d at 791). Plaintiffs' unjust enrichment claim relies on the same factual allegations and "is premised on the same theory of misrepresentation that undergirds their statutory claims under NYGBL §§ 349 and 350 and their tort claims for . . . misrepresentation and breach of warranty." *Budhani*, 527 F. Supp. 3d at 688 (dismissing unjust enrichment claim). And Plaintiffs incorporate precisely the same factual allegations into each count of their Consolidated Complaint. CC ¶¶ 39, 45, 52, 62, 71, 76. Simply put, Plaintiffs' unjust enrichment claim is founded on the same theory as each of their other claims: "Defendant's labeling of the Products was misleading to consumers" and Plaintiffs "would have not purchased the products if the true facts would have been known." *Compare* CC ¶ 74; *with id.* ¶¶ 39-70, 76-81. For these reasons, Plaintiffs' unjust enrichment claim should be dismissed.

## VI.    PLAINTIFFS LACK STANDING FOR INJUNCTIVE RELIEF CLAIMS.

Even if any of the claims survive, the Court should dismiss Plaintiffs' request for injunctive relief pursuant to Rules 12(b)(1) and 12(b)(6). This Court has offered extensive analysis regarding when a plaintiff can establish standing to seek injunctive relief on a labeling claim:

> "[t]o establish standing to obtain prospective relief, a plaintiff 'must show a likelihood that he will be injured in the future.'" *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) (quoting *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)). Either there must be a "substantial risk" that the future injury will occur, or the threatened injury must be "certainly impending." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014). "'[A]llegations of *possible* future injury' are not sufficient," *Amnesty Int'l*, 568 U.S. at 409, 133 S.Ct. 1138, nor is "past exposure to illegal conduct," *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (internal brackets omitted) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

*Lugones*, 440 F. Supp. 3d at 238 (emphasis in original).

Here, Plaintiffs "ha[ve] failed to allege that [they] intend[] to use the offending product in the future" and, as a result, "there is no likelihood of future harm." *Id.* at 239 (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)); *see also Cosgrove*, 520 F. Supp. 3d at 574.

Where, as here, Plaintiffs "fail[] to allege any actual intent to purchase [the Prime Energy drinks] again, . . . they have not established a likelihood of future injury sufficient to show standing." *Lugones*, 440 F. Supp. 3d at 239. For that reason, Plaintiffs' claim for injunctive relief must be dismissed—both on an individual basis and "on behalf of a putative . . . class." *Id.* at 239 n.6 (quoting *O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 527 (S.D.N.Y. 2018)).

## VII.    DISMISSAL SHOULD BE WITH PREJUDICE.

The Court should dismiss the Consolidated Complaint with prejudice. The Consolidated Complaint is the fifth complaint filed in this litigation. (*Drugas* Complaint; *Vera* Complaint [ECF 1]; Amended Complaint [ECF 12]; *Preudhomme* Complaint; Consolidated Complaint [ECF 33]). Plaintiffs had full notice regarding the pleading deficiencies identified above, including in prior pre-motion letters and in the Memorandum of Law in Support of the Motion to Dismiss the Amended Complaint filed on June 21, 2024 [ECF 21], and multiple opportunities to amend. Thus, dismissal should be with prejudice. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (affirming denial of leave to amend when plaintiffs had an opportunity to amend after being provided notice of pleading deficiencies). Moreover, given the deficiencies, further amendment would be futile. *See Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 173 (E.D.N.Y. 2014) ("Leave to amend should not be granted where such amendment would be futile."). Plaintiffs' Consolidated Complaint should be dismissed with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, defendant Prime Hydration LLC respectfully requests that the Court grant its Motion to Dismiss the Consolidated Complaint, with prejudice, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and where applicable, Rule 9(b).

Dated: October 16, 2024

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: /s/ *Stephen L. Saxl*
Stephen L. Saxl
One Vanderbilt Avenue
New York, New York 10017
(212) 801-9200
saxls@gtlaw.com

-and-

Francis A. Citera (*pro hac vice*)
GREENBERG TRAURIG, LLP
77 Wacker Drive, Suite 3100
Chicago, IL 60601
(312) 456-8413
citeraf@gtlaw.com

*Attorneys for Defendant*
*Prime Hydration LLC*