UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

IN RE: PRIME ENERGY CONSUMER
LITIGATION

This document relates to:

All Actions

                         Case No. 1:24-cv-02657 (KPF)

------------------------------------------------------------x

**PLAINTIFFS' OPPOSITION TO DEFENDANT PRIME HYDRATION LLC'S
MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................1

II.   FACTUAL BACKGROUND ..........................................................................................1

III.  LEGAL STANDARD ......................................................................................................3

IV.   ARGUMENT ...................................................................................................................4

    A.  Plaintiffs Sufficiently Allege Claims Under GBL § 349 and 350 .........................4

        1.  Plaintiffs sufficiently allege a misrepresentation regarding the product's

            caffeine content ............................................................................................5

        2.  A "reasonable consumer" analysis should not be performed at the pleading stage, but

            if performed, Defendant's representation would deceive a reasonable consumer .........7

        3.  Plaintiffs sufficiently allege an actual injury under the GBL ......................................10

    B.  Plaintiffs Sufficiently Allege Claims for Violation of State Consumer Fraud Acts ...........13

    C.  Plaintiffs Sufficiently Allege a Breach of Express Warranty Claim ...............................14

        1.  Plaintiffs have pled a material misrepresentation .......................................................14

        2.  Plaintiffs provide the statutory notice required by U.C.C. Law § 22-607(3)(a) ..........15

           a.  Defendant's argument is not properly raised through a motion to dismiss ...........15

           b.  Plaintiffs provide proper notice ...........................................................................15

    D.  Plaintiffs Sufficiently Allege a Fraud Claim ...................................................................17

        1.  Plaintiffs have properly alleged a material misrepresentation resulting in damages ...17

        2.  Plaintiffs have satisfied Rule 9(b)'s heighted pleading standard ................................17

    E.  Plaintiffs Sufficiently Allege an Unjust Enrichment Claim .............................................19

        1.  Plaintiffs have properly pled a claim for unjust enrichment ......................................19

        2.  Plaintiffs are permitted to plead their unjust enrichment claim in the alternative to

their other claims...........................................................................................................20

F.   Plaintiffs Have Standing for Injunctive Relief................................................................21

G.   Any Dismissal of Plaintiff's Claims Should be Without Prejudice and

with Leave to Amend ........................................................................................................22

V.    CONCLUSION.................................................................................................................23

## **TABLE OF AUTHORITIES**

### **Cases**

*Ackerman v. Coca-Cola Co.*,
  No. 09 CV 395 (DLI) (RML), 2013 WL 7044866 (E.D.N.Y. 2013) ........................................ 21

*Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*,
  473 F. Supp. 3d 361 (S.D.N.Y. 2020) .................................................................................. 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................ 4

*Beck v. Mfrs. Hanover Trust Co.*,
  820 F.2d 46 (2d Cir. 1987) ................................................................................................ 18

*Belfiore v. Procter & Gamble Co.*,
  94 F. Supp. 3d 440 (E.D.N.Y. 2015) .................................................................................. 21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 4

*Besicorp Grp. v. Thermo Electron Corp.*,
  981 F. Supp. 86 (N.D.N.Y. 1997) ...................................................................................... 16

*Borenkoff v. Buffalo Wild Wings, Inc.*,
  No. 16-CV-8532 (KBF), 2018 WL 502680 (S.D.N.Y. Jan. 19, 2018) .................................... 12

*Brady v. Anker Innovations Ltd.*,
  No. 18-cv- 11396(NSR), 2020 WL 158760 (S.D.N.Y. Jan. 13, 2020) ........................................ 4

*Braynina v. TJX Cos., Inc.*,
  No. 15 Civ. 5897 (KPF), 2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016) ............................. 4, 10

*Buonasera v. Honest Co., Inc.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016) ................................................................................... 7

*Burton v. Iyogi, Inc.*,
  No. 13-cv-6926, 2015 WL 4385665 (S.D.N.Y. Mar. 16, 2015) ............................................. 20

*Campbell v. Bradco Supply Co.*,
  2021 NY Slip Op 01745, 194 A.D.3d 143, 143 N.Y.S.3d 680 (App. Div. 2nd Dept.) ............. 15

*Casey v. Odwalla, Inc.*,
  338 F. Supp. 3d 284 (S.D.N.Y. 2018) .................................................................................... 4

*Chill v. General Electric Co.*,
   101 F.3d 263 (2d Cir. 1996) ................................................................................. 18

*Cohen v. Koenig*,
   25 F.3d 1168 (2d Cir. 1994) ................................................................................. 17

*Connecticut National Bank v. Fluor Corp.*,
   808 F.2d 957 (2d Cir. 1987) ................................................................................. 17

*Cooper v. Anheuser-Busch*, LLC,
   553 F. Supp. 3d 83 (S.D.N.Y. 2021) ...................................................................... 8

*Cosgrove v. Oregon Chai, Inc.*,
   520 F. Supp. 3d 562 (S.D.N.Y. 2021) .................................................................. 22

*Cuba Cheese, Inc. v. Aurora Valley Meats, Inc.*,
   113 A.D.2d 1012, 494 N.Y.S.2d 571 (App. Div. 4th Dept. 1985) ......................... 15

*DaCorta v. AM Retail Grp., Inc.*,
   No. 16 Civ. 01748, 2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) ............................ 11

*Daniel v. Mondelez Int'l, Inc.*,
   287 F. Supp. 3d 177 (E.D.N.Y. 2018) ..................................................................... 8

*Dimond v. Darden Restaurants, Inc.*,
   No. 13 CIV. 5244 KPF, 2014 WL 3377105 (S.D.N.Y. July 9, 2014) ..................... 11

*Donahue v. Ferolito, Vultaggio & Sons*,
   13 A.D.3d 77, 786 N.Y.S.2d 153 (2004) ................................................................ 10

*Duran v. Henkel of Am., Inc.*,
   450 F. Supp. 3d 337 (S.D.N.Y. 2020) ..................................................................... 7

*Esquibel v. Colgate-Palmolive Co.*,
   No. 23-CV-00742-LTS, 2023 WL 7412169 (S.D.N.Y. Nov. 9, 2023) .................... 23

*Gale v. Int'l Bus. Machs. Corp.*,
   9 A.D.3d 446, 781 N.Y.S.2d 45 (2d Dep't 2004) .................................................. 13

*Gen. Elec. Credit Corp. v. Xerox Corp.*,
   112 A.D.2d 30, 490 N.Y.S.2d 407 (App. Div. 4th Dept. 1985) ............................ 15

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) ....................................................................... 13

v

*Great W. Ins. Co. v. Graham*,
 No. 18-CV-6249 (VSB), 2020 WL 3415026 (S.D.N.Y. June 22, 2020)..............................20-21

*Hasemann v. Gerber Prods. Co.*,
 15-CV- 2995 (MKB), 2016 WL 5477595 (E.D.N.Y. Sep. 28, 2016) ........................................ 17

*Hawkins v. Coca-Cola Co.*,
 654 F. Supp. 3d 290 (S.D.N.Y. 2023) ...................................................................................... 6

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc*.,
 148 F. Supp. 3d 285 (S.D.N.Y. 2015) ...................................................................................... 8

*Hubbard v. Gen. Motors Corp.*,
 No. 95 Civ. 4362 (AGS), 1996 WL 274018 (S.D.N.Y. May 22, 1996)....................................... 15

*In re Frito-Lay N. Am., Inc. All Natural Litig*,
 12-MD-2413 (RRM)(RLM), 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ..................... 18, 19

*In re MPM Silicones, L.L.C.*,
 596 B.R. 416 (S.D.N.Y. 2019)................................................................................................... 4

*In re Scotts EZ Seed Litigation*,
 304 F.R.D. 397 (S.D.N.Y. 2015)............................................................................................... 11

*John v. Whole Foods Mkt. Grp., Inc.*,
 858 F.3d 732 (2d Cir. 2017)............................................................................................ 4, 6, 12

*Kelly v. Beliv LLC*,
 640 F. Supp. 3d 286 (S.D.N.Y. 2022) ...................................................................................... 14

*Koenig v. Boulder Brands, Inc.*,
 995 F. Supp. 2d 274 (S.D.N.Y. 2014) ...................................................................................... 12

*Koenigsberg v. Bd. of Trustees of Columbia Univ. in City of New York.*,
 No.  23-cv-1044 (PGG), 2024 WL 1256270 (S.D.N.Y. Mar. 22, 2024)................................... 10

*Kurtz v. Kimberly-Clark Corporation*,
 321 F.R.D. 482 (E.D.N.Y. 2017) ............................................................................................. 22

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
 897 F.3d 88 (2d Cir. 2018)....................................................................................................... 13

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
 797 F.3d 160 (2d Cir. 2015)..................................................................................................... 23

*Lugones v. Pete & Gerry's Organic, LLC.*,
    440 F. Supp. 3d 226 (S.D.N.Y. 2020) ............................................................. 15, 22

*Maroney v. Woodstream Corp.*,
    695 F. Supp. 3d 448 (S.D.N.Y. 2023) ............................................................. 16, 17

*Mason v. Reed's Inc.*,
    515 F. Supp. 3d 135 (S.D.N.Y. 2021) ................................................................... 20

*McCabe v. CVS Health Corp.*,
    No. 22CV3116RPKRML, 2023 WL 6385729 (E.D.N.Y. Sept. 29, 2023) ............................... 11

*McCracken v. Verisma Sys., Inc.*,
    91 F.4th 600 (2d Cir. 2024) ................................................................................. 9

*Mogull v. Pete and Gerry's Organics, LLC*,
    588 F. Supp. 3d 448 (S.D.N.Y. Feb. 28, 2022) ..................................................... 8, 19

*Myers v. Wakefern Food Corp.*,
    No. 20 Civ. 8470 (NSR), 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ................................. 5, 6

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ................................................................................. 22

*Nordwind v. Rowland*,
    584 F.3d 420 (2d Cir. 2009) ................................................................................. 20

*Noto v. 22nd Century Grp., Inc.*,
    35 F.4th 95 (2d Cir. 2022) ................................................................................... 22

*O'Neill v. Standard Homeopathic Co.*,
    346 F. Supp. 3d 511 (S.D.N.Y. 2018) ................................................................... 13

*Orlander v. Staples, Inc.*,
    802 F. 3d 289 (2d Cir. 2015) ......................................................................... 4, 7, 10

*Paulino v. Conopco, Inc.*,
    No. 14-CV-5145 (JG) (RML), 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ........................ 15

*Pittman v. Chick-fil-A, Inc.*,
    No. 21 CIV. 8041 (VM), 2022 WL 2967586 (S.D.N.Y. July 27, 2022) ............................ 10, 11

*Porat v. Lincoln Towers Cmty. Ass'n*,
    464 F.3d 274 (2d Cir. 2006) ................................................................................. 22

*Santiful v. Wegmans Food Mkts., Inc.*,
   No. 20-CV-2933 (NSR), 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022)....................................... 5, 6

*Schafer v. Direct Energy Servs., LLC*,
   No. 19-CV-6907-FPG, 2022 WL 4922328 (W.D.N.Y. Oct. 4, 2022) ....................................... 12

*Scholder v. Sioux Honey Ass'n Coop.*,
   No. CV 16-5369 (GRB), 2022 WL 125742 (E.D.N.Y. Jan. 13, 2022) ..................................... 20

*Segedie v. Hain Celestial Group, Inc.*,
   No. 14-cv-5029 (NSR), 2015 WL 2168374 (S.D.N.Y. May 7, 2015) ......................................... 7

*Shields v. Citytrust Bancorp, Inc*.,
   25 F.3d 1124 (2d Cir. 1994) ....................................................................................................... 17, 18

*Tomasino v. Estee Lauder Cos.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) ............................................................................................. 15

*Twohig v. Shop-Rite Supermarkets, Inc*.,
   519 F. Supp. 3d 154 (S.D.N.Y. 2021) ............................................................................................ 8

*United States ex rel. Ladas v. Exelis, Inc*.,
   824 F.3d 16 (2d Cir. 2016) ............................................................................................................ 17

*Wargo v. Hillshire Brands Company*,
   No. 20 CV 8672 (NSR), 2022 WL 1204652 (S.D.N.Y. 2022) ................................................... 10

*Weinstein v. eBay, Inc.*,
   819 F. Supp. 2d 219 (S.D.N.Y. 2011) ........................................................................................ 8, 9

*Yourth v. Phusion Projects, LLC*,
   No. 1:11-CV-1261 (NAM/CFH), 2012 WL 13055006 (N.D.N.Y. Sep. 27, 2012).................... 20

## Statutes

21 U.S.C. § 343(a)(1).......................................................................................................................... 2

N.Y. Gen. Bus. Law § 349 .............................................................................. 1, 2, 4, 7, 8, 10, 12

N.Y. Gen. Bus. Law § 350 .............................................................................. 1, 2, 4, 7, 8, 10, 12

N.Y. U.C.C. Law § 2-607.......................................................................................................... 15, 16

## Rules

Fed. R. Civ. P. 8(d)(3) ...................................................................................................................... 27

Fed. R. Civ. P. 9(b) ................................................................................................................. 24, 25

## I.    INTRODUCTION

This putative class action is brought on behalf of Plaintiffs individually and on behalf of consumers who purchased Defendant's popular "PRIME Energy" drinks, which include Prime Energy Blue Raspberry, Prime Energy Ice Pop, Prime Energy Lemon Lime, Prime Energy Orange Mango, Prime Energy Strawberry Watermelon, and Prime Energy Tropical Punch (collectively, "Product"). Plaintiffs allege "Defendant's Products' label plainly states the Products contain '200mg of caffeine'." ECF No. 33, Consolidated Class Action Complaint ("Compl.") ¶ 12. "However, based upon testing commissioned by Plaintiffs' attorneys, the Products actually contain between 215-225 milligrams of caffeine rather than the advertised 200 milligrams." *Id.* ¶ 13. Thus, Plaintiffs contend that "Defendant markets its Products in a systematically misleading manner, by misrepresenting that its Products have specific amounts of caffeine that they do not in fact contain ('Misrepresentations')." *Id.* ¶ 1. Based on these Misrepresentation, Plaintiffs assert claims against Defendant for: (1) violation of state consumer fraud acts; (2) violation of NY General Business Law § 349 ("GBL § 349"); (3) violation of New York General Business Law § 350 ("GBL § 350"); (4) breach of express warranty; (5) unjust enrichment; and (6) fraud. *See* Compl. For the reasons set forth herein, Defendant's Motion to Dismiss the Consolidated Class Action Complaint ("Motion" or "MTD") should be denied. *See* ECF Nos. 40-42.

## II.    FACTUAL BACKGROUND

Defendant formulates, manufactures, advertises, and sells the Product throughout the United States, including in New York. Compl. ¶ 1. In 2023, its first year of sales, Defendant reportedly generated $250 million in retail sales worldwide. *Id.* ¶11. Defendant's marketing campaign has been criticized for targeting children and adolescents despite the Products' high concentration of caffeine and label stating the Product is "not recommended for children under 18 years of age, people sensitive to caffeine, pregnant women or women who are nursing." *Id.* ¶ 13.

Indeed, "[s]everal countries, jurisdictions, and primary and secondary schools have banned or restricted the Products due to their caffeine content exceeding legal limits, or otherwise being deemed unsafe for children to consume." *Id.* Plaintiffs allege "[t]here is no proven safe dose of caffeine for children," and reference in their Complaint various side effects for kids consuming caffeine, in detail. *Id.* ¶ 15. Thus, Plaintiffs allege: "It is axiomatic that the amount of reported caffeine contained within Defendant's Products (or any energy drink product) is material to any consumer seeking to purchase an energy drink, particularly where there is the possibility of an adverse reaction to caffeine, such as with children." *Id.* ¶ 18.

Plaintiffs allege "Defendant markets its Products in a systematically misleading manner, by misrepresenting that its Products have specific amounts of caffeine that they do not in fact contain." *Id.* ¶ 1. Specifically, "Defendant labels and advertises its Products to contain 200 milligrams of caffeine on its website, through third-party retailor websites like Amazon.com, and on the side and back of the Products themselves." *Id.* ¶ 19. Plaintiffs also include in their Complaint exemplary photos of the Product can, which plainly state the Products contain "200mg of caffeine per 12 oz serving." *Id.* ¶ 20. "However, based on testing commissioned by Plaintiffs' attorneys, the Products actually contain between 215-225 milligrams of caffeine rather than the advertised 200 milligrams." *Id.* ¶ 21.

Plaintiffs allege Defendant's false, misleading, and deceptive statements and representations of fact regarding the caffeine content of the Product deem the Products "misbranded" under 21 U.S.C. § 343(a)(1) and similar state laws. *Id.* ¶ 23. Plaintiffs also allege Defendant's statements are unlawful under state unfair deceptive acts and practices statues, including GBL §§ 349 and 350. *Id.* ¶¶ 24, 47, 54. Plaintiffs allege Defendant intended for Plaintiffs and Class members to be misled by the "200mg caffeine" statement on the Product label. *Id.* ¶ 27.

Indeed, Defendant's Misrepresentations were and are likely to mislead a reasonable consumer acting reasonably under the circumstances. *See id.* ¶¶ 42, 56.

Plaintiff Vera alleges that she purchased the Product several times in 2023 from Family Dollar and Dollar General stores in New York. *Id.* ¶ 5. Plaintiff Vera paid approximately $3.00 or $4.00 for each Product. *Id.* Plaintiff Thompson alleges that she purchased the Product several times in 2023 from Food Bazaar Supermarket in New York. *Id.* ¶ 6. Plaintiff Thompson most recently purchased two 24-count cases of the Product and paid approximately $1.45 per bottle. *Id.* Plaintiff Preudhomme alleges that he purchased several of the Products in New York during the applicable statute of limitations period and that he paid the regular retail prices for the Products. *Id.* ¶ 7. Plaintiffs Vera and Thompson both allege that prior to purchase, they read the Products' labeling and advertising, including the representation that they contained "200mg of caffeine." *Id.* ¶¶ 5, 6. This was a material representation that Plaintiffs Vera and Thompson understood to mean that the Products contained 200 milligrams of caffeine. *Id.* Plaintiffs Vera and Thompson relied on this representation in their purchases of the Products and either paid a price premium for the Product, or they would not have purchased the Products at all had they known that this representation was false and misleading. *Id.* Similarly, Plaintiff Preudhomme alleges that he relied on the packaging in making his purchase, was unaware that the Products contained more caffeine than advertised and would not have purchased the Products if that were fully disclosed or he would have paid less than he did. *Id.* ¶ 7. Plaintiff Preudhomme "would purchase the Products again if Defendant (i) lowered the amount of caffeine in the Products; and/or (ii) undertook corrective changes to the packaging." *Id.*

## III. LEGAL STANDARD

Under Rule 12(b)(6), when a defendant seeks dismissal of a complaint for failure to state

a claim upon which relief can be granted, this Court has emphasized that it "must take all material factual allegations as true and draw reasonable inferences in the nonmoving party's favor[.]" *In re MPM Silicones, L.L.C.*, 596 B.R. 416, 427 (S.D.N.Y. 2019); *see also Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 291 (S.D.N.Y. 2018). A complaint will survive a Rule 12(b)(6) motion so long as it articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) (all a plaintiff is required to do at the pleading stage is to "generally allege facts that, accepted as true, make his alleged injury plausible."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

## IV.    ARGUMENT

### A.    Plaintiffs Sufficiently Allege Claims Under GBL §§ 349 and 350.

To state a claim under GBL §§ 349 or 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F. 3d 289, 300 (2d Cir. 2015). "'[C]laims under GBL Sections 349 and 350 'are not subject to the heightened pleading requirements of Rule 9(b)."' *Brady v. Anker Innovations Ltd*., No. 18-cv-11396(NSR), 2020 WL 158760, at *10 (S.D.N.Y. Jan. 13, 2020) (quoting *Braynina v. TJX Cos., Inc.*, No. 15 Civ. 5897 (KPF), 2016 WL 5374134, at *6 (S.D.N.Y. Sept. 26, 2016)).

Defendant's Motion to dismiss Plaintiffs' GBL claims fails for the reasons below.

### 1. Plaintiffs sufficiently allege a misrepresentation regarding the Product's caffeine content.

Defendant argues that "Plaintiffs fail to adequately allege materially misleading conduct because they fail to allege…that the labels on the Prime Energy drinks they purchased misrepresented the caffeine conduct of those cans…." MTD at 9. This is demonstrably false since Plaintiffs allege "Defendant markets its Products in a systematically misleading manner, by misrepresenting that its Products have specific amounts of caffeine that they do not in fact contain[.]" Compl. ¶ 1. This statement applies to *all* Products, including the ones purchased by Plaintiffs.

As described above, Defendant sells energy drinks (the Products) that are labeled and advertised to contain 200 milligrams of caffeine per 12-ounce can. *See, e.g., id.* ¶¶ 12, 14. "However, based upon testing commissioned by Plaintiffs' attorneys, the Products actually contain between 215-225 milligrams of caffeine rather than the advertised 200 milligrams." *Id.* ¶ 21. The foregoing allegations sufficiently allege a misrepresentation regarding the Product's caffeine content.

Defendant nevertheless challenges the sufficiency of Plaintiffs' allegations concerning the testing commissioned by their attorneys, arguing they are speculative. *See* MTD at 10-12. In support of its argument, Defendant cites two cases related to the misleading labeling of products containing vanilla ("Vanilla Cases") in which the plaintiffs alleged the word "vanilla" on the front label of the product deceived them into believing that the vanilla flavoring in the products came only from vanilla beans and was not enhanced by non-vanilla flavors or artificial flavors. *See* MTD at 10 (citing *Myers v. Wakefern Food Corp.*, No. 20 Civ. 8470 (NSR), 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022); *Santiful v. Wegmans Food Mkts., Inc.*, No. 20-CV-2933 (NSR), 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022)). In both Vanilla Cases, this Court rejected the alleged

testing because it did not actually support the plaintiffs' allegations. *See Myers*, 2022 WL 603000, at *4 (dismissing plaintiff's claim upon determining that "Plaintiff fails to substantiate how exactly the two alleged findings from the purported lab test helped her arrive at the conclusion that the Product is made of artificial flavors."); *Santiful*, 2022 WL 268955, at *4 (proffered testing failed to support plaintiff's claims when it was determined that "the alleged 'artificial flavors' themselves [were] not in fact 'artificial.'"). Defendant also cites *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290 (S.D.N.Y. 2023), where like in the Vanilla Cases, the plaintiff alleged the "flavors" in the product came from artificial as opposed to natural sources. *See id.* at 297. The plaintiff alleged that while the product represented that it contained "100% natural flavors," on the front of the bottle, it actually contained an artificial form of Malic Acid. *Id*. However, the ingredients list on the back of the bottle listed both "natural flavors" and "Malic Acid" as components of the product. *Id.* Thus, the Court found the plaintiff failed to allege that a reasonable consumer would be misled by representations on the bottle. *See id.* 302-03. While the plaintiff attempted to rely on "laboratory analysis" to substantiate her claim, the Court stated, "[a]s in the Vanilla Cases, the 'lack of sufficient allegations here that the purportedly artificial flavors are in fact artificial is fatal to Plaintiff['s] claim that the ingredients list has made a material omission.'" *Id.* at 306 (quotation omitted).

Here, in contrast, the Product label unambiguously represents the caffeine content of the Product (*i.e.*, 200 mg), and Plaintiffs' allegations regarding the testing commissioned by their attorneys directly supports their theory that the Product contains more than 200 mg of caffeine. Thus, the facts here bear no resemblance to those in *Myers*, *Santiful*, and *Hawkins*.

Further, Defendant ignores well-settled law that Plaintiffs are not required to disclose all the details of their testing at the pleading stage. *See John*, 858 F.3d at 737. All a plaintiff is required

to do at the pleading stage is to "generally allege facts that, accepted as true, make his alleged injury plausible." *Id.* Here, Plaintiffs allege facts that, when accepted as true in the light most favorable to Plaintiffs, make it plausible that the Products purchased by Plaintiffs contained amounts of caffeine in excess of the 200 mg represented on its label. *See* § II, *supra*.

        **2.      A "reasonable consumer" analysis should not be performed at the pleading stage but, if performed, Defendant's representation would deceive a reasonable consumer.**

For purposes of GBL §§ 349, 350, an act is materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander*, 802 F.3d at 300. Here, Defendant argues that representing the Products have less caffeine than they actually do is not "material to the reasonable Prime Energy drink consumer." MTD at 12. Further, Prime asks the Court to assume reasonable consumers of the Product always want more caffeine in their drinks, regardless of what the label says. *See id.* at 13. Defendant's argument is patently absurd and should be rejected.

First, Defendant's argument runs afoul of the principle that a reasonable consumer analysis should not take place at the pleading stage. "While it is possible for a court to decide this question as a matter of law, this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (citation omitted). Indeed, the vast majority of courts to have considered this issue have agreed to defer resolution of this question beyond the pleading stage. *See Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) ("Courts have generally held that since this second factor requires a reasonableness analysis, it cannot be resolved on a motion to dismiss."); *Segedie v. Hain Celestial Group, Inc.*, No. 14-cv-5029 (NSR), 2015 WL 2168374, *12 (S.D.N.Y. May 7, 2015) ("Whether the labels would mislead a reasonable consumer is a question of fact for the jury.");

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc*., 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015) ("A court may make [the reasonable consumer determination] as a matter of law, although usually such a determination is a question of fact."). "Consequently, '[d]ismissal [at the motion to dismiss stage] is warranted only in a rare situation where it is impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived."' *Mogull v. Pete and Gerry's Organics, LLC*, 588 F. Supp. 3d 448, 453 (S.D.N.Y. Feb. 28, 2022).

Second, if the Court decides to perform a reasonable consumer analysis at this stage, Plaintiffs have sufficiently alleged that Defendant's representation would deceive a reasonable consumer. As an initial matter, Plaintiffs are not required to separately plead "materiality" to state a GBL claim. Defendant argues the inquiry is "whether a 'reasonable [Prime Energy drink] consumer acting reasonably' would believe that the caffeine content being 15 to 25 mg *higher* than stated on the label would materially *decrease* the value of the Prime Energy drinks." MTD at 13. This is not the appropriate inquiry. Indeed, the second element of a GBL claim requires a plaintiff to plead the existence of "a *material* misrepresentation [which] is one that is 'likely to mislead a reasonable consumer acting reasonably *under the circumstances.*"' *Cooper v. Anheuser-Busch*, *LLC*, 553 F. Supp. 3d 83, 108 (S.D.N.Y. 2021) (quoting *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 189 (E.D.N.Y. 2018)). "In other words, the materiality requirement is incorporated in the legal standard courts use when evaluating whether plaintiffs have adequately pled the second element of a deceptive labeling claim." *Id.* "It does not form some quasi-distinct element that plaintiffs must separately satisfy." *Id.* All that is required to survive a motion to dismiss is that Plaintiffs "'plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled' by the Products." *Id.* (quoting *Twohig v. Shop-Rite Supermarkets, Inc*., 519 F. Supp. 3d 154 (S.D.N.Y. 2021)); *see also Weinstein*

8

*v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) (stating "the applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled by [a defendant's] actions"). As Defendant acknowledges, "a misrepresentation is materially misleading where it 'would have caused [reasonable consumers] to make a different initial choice.'" *See* MTD at 12 (citing *McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 608 (2d Cir. 2024)).

Here, Plaintiffs satisfy this pleading standard by alleging that reasonable consumers of the Product would believe the Product contains 200 mg caffeine based on the "200 mg caffeine" representation on the Products' label, and that reasonable consumers would have made a different choice had they known the Products did not contain the amount of caffeine represented on the label. *See, e.g.,* Compl. ¶¶ 5-7, 15, 18, 20, 21, 49, 56.

Defendant's contention that a reasonable consumer would *prefer* more caffeine presents a question of fact that cannot be determined at the pleading stage. In any event, Defendant's theory of "more is always better" is nonsensical. Accurate labeling is necessary so that consumers can decide for themselves how much caffeine they want to ingest. Arguably, reasonable consumers would believe that a product labeled with the phrase "200 mg caffeine" contains 200 milligrams of caffeine. They would *not* expect an energy drink already containing a high amount of caffeine to contain *more* caffeine than is represented on the label, particularly where there is the possibility of an adverse reaction to caffeine.

Further, Defendant's comparison of the Product's caffeine content to coffee products (the most caffeine dense products on the market) instead of other energy drinks is a red herring. *See* MTD at 14. Defendant sells energy drinks, not coffee. And a 12 oz. can of Red Bull, for example, contains 114mg of caffeine, nearly half the caffeine content of a 12 oz. can of Prime Energy. Compl. ¶ 14. If more were always better, as Defendant asks the Court to accept as a matter of law,

it would be hard to explain why Red Bull, a leading energy drink brand, would choose to put nearly half the caffeine content that Defendant puts into its own products.

Accordingly, Defendant has not demonstrated that Plaintiffs' GBL claims should be dismissed.

### 3. Plaintiffs sufficiently allege an actual injury under the GBL.

Defendant mistakenly argues that Plaintiffs' GBL claims must be dismissed because they fail to allege actual injury. MTD at 14. To satisfy the injury element of GBL §§ 349 or 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302. "One way to do so is to allege that the plaintiff would not have purchased the product or been willing to pay as much had they known the true facts." *Wargo v. Hillshire Brands Company*, No. 20 CV 8672 (NSR), 2022 WL 1204652, at *5 (S.D.N.Y. 2022) (internal quotation marks and citation omitted). Plaintiffs can allege an injury by identifying "an overpayment or price premium, whereby a plaintiff pays more than she would have but for the deceptive practice." *Koenigsberg v. Bd. of Trustees of Columbia Univ. in City of New York.*, No. 23-cv-1044 (PGG), 2024 WL 1256270 at *9 (S.D.N.Y. Mar. 22, 2024) (quoting *Braynina*, 2016 WL 5374134, at *10).

Defendant relies on a series of distinguishable cases where plaintiffs failed to allege an actual injury.[1] However, in each of those cases, the plaintiffs failed to show how the deception "related to the value of the purchased product, or how the product fell short of what it purported to be. *See Pittman v. Chick-fil-A, Inc.*, No. 21 CIV. 8041 (VM), 2022 WL 2967586, at *5

---

[1] Defendant also relies on *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 786 N.Y.S.2d 153 (2004), where the plaintiff failed to allege they paid an inflated price for the drinks, and thus failed to allege a cognizable injury. Plaintiffs here have alleged that they overpaid for a product that did not conform to the representations on its label. Compl. ¶ 5-7, 15-18, 58.

(S.D.N.Y. July 27, 2022), *appeal withdrawn*, No. 22-1862, 2023 WL 2147334 (2d Cir. Jan. 25, 2023) (*quoting DaCorta v. AM Retail Grp., Inc.*, No. 16 Civ. 01748, 2018 WL 557909, at *8 (S.D.N.Y. Jan. 23, 2018). For example, in *Dimond v. Darden Restaurants, Inc.*, No. 13 CIV. 5244 KPF, 2014 WL 3377105, at *1 (S.D.N.Y. July 9, 2014), the plaintiff argued he had been deceived by the defendants' practice of adding an 18 percent gratuity on all bills at the defendants' restaurants while also allowing customers to give additional gratuity. There was no allegation that the restaurant failed to provide the service that plaintiff paid for or that the service was worth less than the 18 percent he paid. Likewise, in *McCabe v. CVS Health Corp.*, No. 22CV3116RPKRML, 2023 WL 6385729, at *2 (E.D.N.Y. Sept. 29, 2023), the plaintiff alleged the defendant engaged in deceptive business practices by soliciting a charity donation when, in reality, the company had committed to donating $10 million to the charity regardless of how much it raised from customer donations. In *McCabe*, the plaintiff did not allege that the charity did not receive the donation, only that he may not have donated had he known the company would make up any fundraising shortfall. Here, Plaintiffs have adequately pled how the Product fell short: Plaintiffs were injured when they paid the purchase price and/or a price premium for the Products that did not deliver what was promised on the label. Compl. ¶¶ 5-7, 58. Plaintiffs purchased the Products believing they contained only 200 mg of caffeine, when instead they contained as much as 225 mg. *Id.* ¶ 21.

In attacking Plaintiffs' price premium theory of damages, Defendant relies on the misguided argument that "more is more," suggesting that "[i]f anything, one might conclude that a purchaser of Prime Energy cans might pay more, not less, for more caffeine." MTD at 16. Ultimately, the price premium attributable to truthful disclosures about the caffeine in the Products is a question of fact that necessitates expert discovery. *See, e.g., In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015). The mere fact that the Products contain more caffeine than

advertised does not render them more valuable as a matter of law.[2] This case is easily distinguishable from *Borenkoff v. Buffalo Wild Wings, Inc.*, , 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018), where the plaintiff failed to show how a restaurant's use of beef tallow affected the objective economic value of the food she purchased. As Plaintiffs allege, it is axiomatic that the *amount* of reported caffeine in the Products (or any energy drink product) is material to any consumer, particularly where there is the possibility of an adverse reaction to caffeine—such as with children. Compl. ¶ 18. It is therefore plausible that if an energy drink contains undisclosed caffeine (an ingredient which is linked to serious side effects such as irregular heartbeat and seizure), it would have an impact on the economic value of the product. At the pleading stage, Plaintiffs need only "generally allege facts that, accepted as true, make his alleged injury plausible." *John*, 858 F.3d at 737.

Defendant also argues that Plaintiffs' GBL claims must be dismissed due to Plaintiffs' failure to show causation, citing *Schafer v. Direct Energy Servs., LLC*, No. 19-CV-6907-FPG, 2022 WL 4922328, at *5 (W.D.N.Y. Oct. 4, 2022), *aff'd*, No. 22-2889, 2023 WL 7485470 (2d Cir. Nov. 13, 2023). In *Schafer*, the court dismissed the plaintiff's GBL claims because he failed to allege that he read contract materials containing the allegedly misleading statements at issue. To properly allege causation, a plaintiff must allege that he has seen the misleading statements of

---

[2] The fact that a product contains more, rather than less, of an advertised ingredient does not foreclose a price premium theory of damages. For example, in *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 277 (S.D.N.Y. 2014), plaintiff alleged the "fat free" milk she purchased actually contained one gram of fat per serving. Like Plaintiffs here, the *Koenig* plaintiffs claimed they paid a price premium for the misrepresentations regarding the fat content of the milk, and that they were entitled to damages in the amount of either the purchase price of the products or the price premium they paid for them. *Id*. at 288. *See* Compl. ¶ 58. The court found these allegations were sufficient to allege injury under GBL § 349. *Id*. The fact that the product at issue contained more—rather than less—of the misrepresented ingredient had no bearing on the court's analysis, even though consumers would presumably pay more for a product with higher milkfat under certain circumstances.

which he complains before he came into possession of the products he purchased. *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (citing *Gale v. Int'l Bus. Machs. Corp.,* 9 A.D.3d 446, 447, 781 N.Y.S.2d 45 (2d Dep't 2004)). Plaintiffs have done just that, alleging that they read and reviewed the Products' labeling containing the "200mg of caffeine" representation before their purchase. Compl. ¶¶ 5-7.

Contrary to Defendant's assertion, Plaintiffs are not required to allege that they drank (or intended to drink) the Products. MTD at 17. Because Plaintiffs have alleged a purely economic injury, they were injured at the point of purchase. *See, e.g., O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 530 (S.D.N.Y. 2018) (plaintiffs asserted they were injured *when they purchased* a product sold by defendants that was found to pose a risk to infants and toddlers, not as a result of their children's consumption of the product at issue). *Id.* Here, Plaintiffs pled they were injured when they paid the purchase price and/or a price premium for the Products that did not deliver what was promised on the label. Compl. ¶¶ 5-7, 58.

### B.    Plaintiffs Sufficiently Allege Claims for Violation of State Consumer Fraud Acts.

Defendant first argues that Plaintiffs cannot bring claims under the laws of other states "because they cannot allege that any relevant conduct occurred in any of those states." MTD at 18. The issue of whether a plaintiff has standing to bring a class action under the state laws of multiple states—as Plaintiffs have done here—was squarely addressed by the Second Circuit in *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88 (2d Cir. 2018), which held that the question of whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III. *Id.* at 96. The Second Circuit noted that such an approach "acknowledges the obvious truth that class actions necessarily involve plaintiffs litigating injuries that they themselves would not

have standing to litigate." *Id.* at 95. The court further noted that: "Since class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members, it makes little sense to dismiss the state law claims of unnamed class members for want of standing when there was no requirement that the named plaintiffs have individual standing to bring those claims in the first place." *Id.*

Defendant argues in the alternative that even if Plaintiffs' multi-state claims were proper (which they are), they still fail for the same reasons Plaintiffs' GBL claims fail. MTD at 19. In *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 300 (S.D.N.Y. 2022), defendant advanced an identical argument in a case where plaintiff pled both New York GBL claims and multi-state consumer protection claims. This Court agreed that because other states' laws are subject to the same pleading standard as the GBL, plaintiff's multi-state claims would rise and fall with her GBL claim. *Id*. Because the *Kelly* court found that plaintiff had stated a GBL claim, it denied defendant's motion to dismiss the multi-state claims. *Id*. This Court should do the same here.

### C. Plaintiffs Sufficiently Allege a Breach of Express Warranty Claim.

#### 1. Plaintiffs have pled a material misrepresentation.

Defendant contends that its argument that Plaintiffs have failed to allege a material misrepresentation in connection with their GBL claims is equally applicable to Plaintiffs' express warranty claims. MTD at p. 20. As Plaintiffs' GBL claims are sound, this argument must fail. *See* § IV.A.1, *supra*.

2.    **Plaintiffs Provided the Statutory Notice Required by U.C.C. Law § 2-607(3)(a).**

a.    **Defendant's argument is not properly raised through a motion to dismiss.**

Defendant argues that Plaintiffs failed to provide the statutory notice required under N.Y. U.C.C. Law § 2-607(3)(a). MTD at 20-22. This argument necessarily fails, as it is improperly raised through a motion to dismiss. Rather, "the sufficiency and timeliness of the notice is generally a question for the jury." *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (*quoting Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362 (AGS), 1996 WL 274018, at *4-5 (S.D.N.Y. May 22, 1996)).[3]

Defendant supports its argument with only one case, *Lugones v. Pete & Gerry's Organic, LLC*. 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020), which is inapposite when applied to the present facts. In *Lugones*, the plaintiffs failed to allege that they had provided any pre-suit notice whatsoever. 440 F. Supp. 3d at 244. Here, as Plaintiffs do allege that they provided pre-suit notice to Defendant, the sufficiency of that notice is a question for the finder of fact. *Tomasino*, 44 F. Supp. 3d at 260.

b.    **Plaintiffs Provided Proper Notice.**

The notice rule of N.Y. U.C.C. Law § 2-607 is a "liberal requirement[]." *Paulino v. Conopco, Inc.*, No. 14-CV-5145 (JG) (RML), 2015 WL 4895234, at *2 (E.D.N.Y. Aug. 17, 2015). "The primary reason for requiring notice is to give the seller the opportunity to make adjustments or replacements, opportunities to minimize the buyer's loss and reduce the seller's own liability.

---

[3] *See also Gen. Elec. Credit Corp. v. Xerox Corp.*, 112 A.D.2d 30, 31, 490 N.Y.S.2d 407, 408 (App. Div. 4th Dept. 1985) (determination of sufficiency of UCC notice is a question for trier of fact); *see also Campbell v. Bradco Supply Co.*, 2021 NY Slip Op 01745, ¶ 4, 194 A.D.3d 143, 150, 143 N.Y.S.3d 680, 686 (App. Div. 2nd Dept.) (same)*; Cuba Cheese, Inc. v. Aurora Valley Meats, Inc.*, 113 A.D.2d 1012, 494 N.Y.S.2d 571, 572 (App. Div. 4th Dept. 1985) (same).

The second reason for requiring notice is to give the seller a chance to prepare for negotiation and litigation." *Besicorp Grp. v. Thermo Electron Corp.*, 981 F. Supp. 86, 101-02 (N.D.N.Y. 1997). A notice letter is not insufficient because it fails to "specify when a product was purchased or used." *Maroney v. Woodstream Corp.*, 695 F. Supp. 3d 448, 467-68 (S.D.N.Y. 2023). Rather, as the Commentary to the Rule notes:

> The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched…The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.

N.Y. U.C.C. Law § 2-607 (commentary).

Here, the notice letter provided to Defendant by Plaintiffs' counsel clearly explained that Plaintiff Vera sought to represent a class of individuals composed of purchasers of Defendant's Products in multiple states, based on Defendant's false statement that its Product contained only 200 milligrams of caffeine. *See* Notice Letter, ECF No. 41-1. These facts are certainly sufficient to inform Defendant that its transactions with Plaintiffs were "troublesome." N.Y. U.C.C. Law § 2-607 (commentary). And the details provided in the notice, including the claims contemplated by Plaintiff Vera and the remedies sought, undoubtedly gave Defendant the opportunity to limit its liability and prepare for litigation. *Besicorp Grp.*, 981 F. Supp. at 101-02. Defendant argues that Plaintiff Vera initially received its Products through a promotion but ignores Plaintiff Vera's allegations that she purchased the Products on several occasions.[4] Plaintiff Vera's failure to provide the precise date of those purchases in the notice letter does not render it invalid. *Maroney*,

---

[4] *See* Compl. ¶ 5 ("After receiving the case, Plaintiff [Vera] purchased Defendant's Blue Raspberry Products several times in 2023 from Family Dollar and Dollar General stores located in Poughkeepsie, New York. The last time Plaintiff recalls purchasing the Product was in July or August 2023, when she purchased the Product from a QuickChek store while visiting a friend in White House Station, New Jersey.")

695 F. Supp. 3d at 468.

### D.    Plaintiffs Sufficiently Allege a Fraud Claim.

#### 1.    Plaintiffs have properly alleged a material misrepresentation resulting in damages.

Defendant claims that Plaintiffs fail to state a claim for fraud "for the same reasons as the GBL §§ 349 and 350 claims." MTD at 22. As Plaintiffs' GBL claims are properly pled, this argument must fail. *See* § IV.A, *supra*.

#### 2.    Plaintiffs have satisfied Rule 9(b)'s heightened pleading standard.

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (alteration in original) (quoting Fed. R. Civ. P. 9(b)). "To satisfy this Rule, a complaint alleging fraud must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Id*. (quoting *Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1128 (2d Cir. 1994)). "Ultimately, whether a complaint satisfies Rule 9(b) depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." *Hasemann v. Gerber Prods. Co.*, No. 15-CV- 2995 (MKB), 2016 WL 5477595, at *14 (E.D.N.Y. Sep. 28, 2016).

Defendant's argument that Plaintiffs' allegations fail to give rise to a strong inference of fraudulent intent is misplaced. *See* MTD at 22-23. Although Rule 9(b) requires that fraud be pled with particularity, plaintiffs need only plead "'circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter.'" *Cohen v. Koenig,* 25 F.3d 1168, 1173 (2d Cir. 1994) (quoting *Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987)). A

"'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 (RRM)(RLM), 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013) (quoting *Shields*, 25 F.3d at 1128). By either standard, Plaintiffs' allegations suffice.

To show motive, plaintiffs must show "concrete benefits [to a defendant] that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Chill v. General Electric Co.,* 101 F.3d 263, 268 (2d Cir. 1996). Indeed, Plaintiffs specify the extensive criticism of the excessive caffeine content of Defendant's Products by leading medical professionals, watchdog groups, and high-profile lawmakers. *See* Compl. ¶¶ 13-17. These allegations support a strong motive for Defendant to fraudulently misstate the caffeine content of its Products, namely, that Defendant concealed the true caffeine content of its Products to allay widespread scrutiny of their excessive caffeination. This Court has found similar allegations to satisfy Rule 9(b). For example, in *In re Ford Fusion & C-Max Fuel Econ. Litig.*, the court analyzed a motion to dismiss a fraud claim arising from the plaintiffs' allegations that the defendant, a vehicle manufacturer, had fraudulently advertised its hybrid vehicles as being more efficient than they actually were. No. 13-MD-2450 (KMK), 2015 WL 7018369, at *34-35 (S.D.N.Y. Nov. 12, 2015). There, the court declined to dismiss the fraud claim, finding that "Plaintiffs have adequately pleaded scienter by alleging 'facts showing a motive for committing fraud and a clear opportunity for doing so,' namely allegations that [the defendant] was lagging in the hybrid market and sought to improve its positioning by advertising improved fuel economy in its hybrid vehicle." *Id*. at 35 (quoting *Beck v. Mfrs. Hanover Trust Co*., 820 F.2d 46, 50 (2d Cir. 1987)). Likewise, Plaintiffs here have pled facts supporting a clear motive for Defendant to obfuscate the caffeine content of

its Products.

Plaintiffs also allege "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Frito-Lay*, 2013 WL 44647512, at *25. As the Complaint states, "[t]here is no proven safe dose of caffeine for children. Side effects for kids consuming caffeine could include rapid or irregular heartbeats, headaches, seizures, shaking, stomach upset and adverse emotional effects on mental health." *Id*. at ¶ 15. Yet, Defendant markets its Products to children, including by using nearly identical packaging for its caffeinated and caffeine-free beverages. Compl. ¶¶ 12-16. These allegations clearly demonstrate Defendant's pattern of recklessly selling high-caffeine beverages without regard for the harm they pose to consumers. Its failure to properly quantify the caffeine content of its Products on its labeling is merely a continuation of that pattern.

Defendant is a sophisticated business entity that has formulated and advertised the caffeine content of its Products. It cannot be allowed to now argue, at the pleading stage, that it is unaware of how much caffeine those Products actually contain. *See Mogull*, 588 F. Supp. 3d at 455 (finding plaintiff's allegations that defendant egg distributor inaccurately advertised its products as "free-range" and was aware of how customers interpret the "free-range" label, was sufficient to establish fraudulent intent at motion to dismiss stage).

For these reasons, Plaintiffs' fraud claim is sound and Defendant's Motion should be denied.

### E.    Plaintiffs Sufficiently Allege an Unjust Enrichment Claim.

#### 1.    Plaintiffs have properly pled a claim for unjust enrichment.

"Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity

and good conscience require restitution." *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (internal quotation marks and citation omitted). Here, Plaintiffs have sufficiently alleged an unjust enrichment claim by stating that it is inequitable for Defendant to retain the revenues derived from their purchases of its Products, when Plaintiffs would not have made those purchases if not for Defendant's false labeling. Compl. ¶¶ 73-74. Indeed, Second Circuit courts applying New York law have maintained claims for unjust enrichment under near-identical circumstances. *See Scholder v. Sioux Honey Ass'n Coop.*, No. CV 16-5369 (GRB), 2022 WL 125742, at *6 (E.D.N.Y. Jan. 13, 2022) (declining dismissal of unjust enrichment claim based on defendant's inaccurate labeling of honey as being "100% pure"); *Yourth v. Phusion Projects, LLC*, No. 1:11-CV-1261 (NAM/CFH), 2012 WL 13055006, at *6 (N.D.N.Y. Sep. 27, 2012) (declining to dismiss unjust enrichment claim based on defendant's failure to disclose dangerously high levels of alcohol and caffeine on beverage label). The Court should find the same in this case.

> **2.    Plaintiffs are permitted to plead their unjust enrichment claim in the alternative to their other claims.**

The Federal Rules of Civil Procedure expressly permit Plaintiffs to plead in the alternative. Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *see also Scholder*, 2022 WL 125742, at *6 (denying motion to dismiss unjust enrichment claim pled in the alternative to other theories of liability); *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 147 (S.D.N.Y. 2021) (same)*; Burton v. Iyogi, Inc.*, No. 13-cv-6926, 2015 WL 4385665, at *11-12 (S.D.N.Y. Mar. 16, 2015) (same). Plaintiff's unjust enrichment claim is not duplicative—it is explicitly pled "in the alternative to Count IV for breach of express warranty." Compl. ¶ 72. And because New York permits alternative pleading, it is premature to dismiss an unjust enrichment claim where Plaintiffs could conceivably be entitled to restitution despite the failure of their other claims. *See, e.g., Great W. Ins. Co. v. Graham*, No. 18-CV-6249 (VSB), 2020

WL 3415026, at *34 (S.D.N.Y. June 22, 2020) (denying dismissal of unjust enrichment claims where, "if the tort claims fail, the unjust claim could partially 'remedy the defects'").

### F.    Plaintiffs Have Standing for Injunctive Relief.

Plaintiffs seek injunctive relief based on Defendant's continued mislabeling of its Products, which is misleading to a reasonable consumer and presents a danger of future and continuing harm to consumers, including Plaintiffs. *See* § IV.A.1, *supra; see also* Compl. ¶¶ 1, 12-17, 19, 20, 36, 37. "An injunction in connection with a class action is designed to afford protection of future consumers from the same fraud." *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015). Thus, "plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer," because to "hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief." *Id.* (quoting *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 (DLI) (RML), 2013 WL 7044866 (E.D.N.Y. 2013)).

Defendant argues Plaintiffs lack standing for their injunctive relief claims based on their failure to allege that they intend to buy the Defendant's product in the future, thus failing to establish a likelihood of future injury. MTD at 24-25. However, Plaintiff Preudhomme specifically alleges that he "would purchase the Products again if Defendant (i) lowered the amount of caffeine in the Products; and/or (ii) undertook corrective changes to the packaging. Damages can be calculated through expert testimony at trial." Compl. ¶ 7. Further, Plaintiffs allege that "[a]bsent a representative class action, members of the Classes would *continue to suffer the harm described herein*, for which they would have no remedy." *Id.* ¶ 36 (emphasis added). Thus, Plaintiffs sufficiently allege the possibility of future harm if injunctive relief is not granted.

The facts in Defendant's cited cases are distinguishable from the facts here. For example,

in *Lugones*, 440 F. Supp. 3d at 238 and *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 574 (S.D.N.Y. 2021), the plaintiffs alleged they *would not purchase the subject products again* absent assurances from the defendant that it would change its advertising practices. Thus, they failed to allege the possibility of future harm. And in *Nicosia v. Amazon.com, Inc.* 834 F.3d 220 (2d Cir. 2016), the Second Circuit held the plaintiff did not establish a "real or immediate threat" of injury where the product at issue was no longer being sold by the defendant. *Id*. at 239.

New York Courts in the Second Circuit have specifically declined to extend *Nicosia* in cases where the defendant continues to sell the misleading product in question. *See, e.g.*, *Kurtz v. Kimberly-Clark Corporation*, 321 F.R.D. 482, 500 (E.D.N.Y. 2017) (stating *Nicosia* is not applicable "to cases where a defendant continues to manufacture or sell the challenged product as misleadingly labeled."). Here, like in *Kurtz*, consumers remain at risk of purchasing a mislabeled and potentially harmful product because Defendant continues to market and sell the Products, which falsely represent that they contain 200 milligrams of caffeine. Thus, injunctive relief to prevent Defendant from continuing to market and sell the mislabeled Products is an entirely appropriate remedy that will serve to protect consumers from purchasing the mislabeled and potentially harmful Products.

**G.    Any Dismissal of Plaintiffs' Claims Should Be Without Prejudice and with Leave to Amend.**

Although Plaintiffs believe the Court should not dismiss Plaintiffs' claims, should the Court choose to do so, Plaintiffs assert that said dismissal should be without prejudice and with leave to amend. "[T]his circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (quoting *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam)). As the Second Circuit has noted, providing liberal leave to amend is appropriate

after dismissal because "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015); *see also Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, 473 F. Supp. 3d 361, 365 (S.D.N.Y. 2020) (there is a particularly strong preference for allowing amendment when "the plaintiff has not had the benefit of a court ruling with respect to the deficiencies of its pleading.").

Defendant's claim that "[t]he Consolidated Complaint is the fifth complaint filed in this litigation," is misleading. *See* MTD at 25. Indeed, the Consolidated Complaint is the first consolidated complaint filed by the parties after the *Vera* and *Preudhomme* cases were consolidated on June 24, 2024. *See* ECF No. 22. Defendant's previous pre-motion letters and motion to dismiss were directed to pleadings other than the Consolidated Complaint at issue. Because Plaintiffs have "not had the benefit of a court ruling with respect to the deficiencies of [their Consolidated Complaint]," should the Court be inclined to grant Defendant's Motion, it should grant Plaintiffs an opportunity to amend their pleading. *See Esquibel v. Colgate-Palmolive Co.*, No. 23-CV-00742-LTS, 2023 WL 7412169, at *4 (S.D.N.Y. Nov. 9, 2023).

## V.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully ask this Court to deny Defendant's Motion on all grounds.

Dated: November 18, 2024          Respectfully submitted,

*/s/ Kristen Lake Cardoso*
Kristen Lake Cardoso (admitted *pro hac vice*)
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-332-4200
cardoso@kolawyers.com

*Interim Lead Counsel for Plaintiffs*
*and the Putative Class*